*In re* PEDRO ROLDÁN FIGUEROA, querellado.

*Número:* O-74-121        *Resuelto:* 6 de mayo de 1977

*Miriam Naveira de Rodón, Procuradora General, Peter Ortiz, Procurador General Interino, Roberto Armstrong, Jr.,* y *Américo Serra, Procuradores Generales Auxiliares,* abogados de El Pueblo; *E. L. Belén Trujillo,* abogado del querellado.

## I

PER CURIAM: El Honorable Procurador General de Puerto Rico formuló querella contra el abogado Pedro Roldán Figue-

roa imputándole los ocho cargos que analiza el Comisionado Especial, Lcdo. César Bobonis Díaz, nombrado por este Tribunal para recibir la prueba del Procurador General y del querellado según informe que presentó ante nos en 13 de noviembre de 1975, y que se relaciona más adelante.

Se celebraron sesiones los días 4, 5, 6, 11, 18, 22, 26 y 27 de noviembre de 1974. Las partes desfilaron y ofrecieron como prueba evidencia testifical y documental.

Del informe del Comisionado Especial y de un examen detenido de toda la prueba testifical y documental este Tribunal hace las determinaciones que aparecen a continuación:

## PRIMER CARGO

El querellado y su esposa, la Lcda. Daisy Ruiz de Roldán, representaron a Carmen L. Gutiérrez en un pleito de divorcio radicado en su contra. A solicitud del querellado la Sra. Gutiérrez prestó a él y a su esposa la suma de $4,000 proveniente de dos certificados de ahorro de $2,000.00 cada uno, más la suma de $8,300.00 que constituía la participación de la Sra. Gutiérrez en la sociedad de bienes gananciales que se había dividido en el pleito de divorcio mencionado. De la suma de $8,300.00 el querellado dedujo honorarios de $1,300.00, reduciéndose dicha suma a un neto de $7,000.00. Para evidenciar el préstamo, el querellado y su esposa otorgaron un documento privado en el que se comprometían a invertir las sumas así recibidas en negocios de préstamos y garantizaban solidariamente el préstamo aunque el producto se perdiese en los negocios en que se proponían invertirlo. Los dineros del préstamo fueron utilizados por el querellado para fines personales. El préstamo no pudo ser pagado en su totalidad, y los intereses convenidos se pagaban con demoras sustanciales. Finalmente la Sra. Gutiérrez se vio obligada a transigir su reclamación con una pérdida de $1,500.00.

## SEGUNDO CARGO

Don Natalio Pagán Oquendo era cliente del querellado y dueño de un negocio establecido en Caguas. El Sr. Pagán interesaba vender su negocio por la suma de $5,200, y la asunción de las deudas por el comprador. Para ese fin otorgó un poder autorizando a un tercero a venderlo, condicionado a que el poder se utilizara solamente a través del querellado, viniendo éste obligado a responderle de la transacción que se efectuara y del importe de la venta.

El Sr. Pagán convino con el querellado que éste recibiría como comisión el exceso sobre $5,200 que produjera la venta del negocio. El querellado fue el que gestionó la compraventa en la que tenía un interés por el exceso del precio, y además actuó como notario autorizante de la escritura de compraventa del referido negocio. En definitiva la venta no se efectuó, pero el querellado había recibido un anticipo de $3,000, que se negó a remitir al Sr. Pagán a pesar de su insistencia. El querellado, sin autorización del Sr. Pagán, asumió el control del negocio y utilizó los $3,000 para poner el negocio en condiciones, pagar los cánones de arrendamientos atrasados y otros gastos, con el fin de tratar de venderlo nuevamente. El Sr. Pagán se vio obligado a recurrir a un abogado para gestionar el cobro de los $3,000 aludidos. Luego convinieron en una transacción mediante la cual el Sr. Pagán vendió el negocio al querellado por los mismos $3,000, que el querellado pagó en varios plazos.

## TERCER CARGO

El querellado y su esposa obtuvieron un préstamo de $5,000 de su amigo de muchos años Antonio Cotto. Dichos esposos otorgaron un pagaré a la vista, con intereses al 8% anual. Al morir Antonio Cotto y su viuda gestionar el cobro del pagaré, el querellado reconoció la deuda pero alegó no poder pagarla por no contar con fondos para ello. La Sucesión Cotto presentó una demanda judicial en cobro de dinero.

En su consecuencia el querellado convino en pagar en diez plazos el montante del préstamo, con condonación de intereses.

## CUARTO CARGO

El querellado le tomó prestado a Fructuoso Martínez la suma de $13,000, y como evidencia del mismo el querellado le entregó un cheque personal girado contra el Banco Popular con el compromiso, según lo habían hecho en el pasado con otros préstamos, de que el cheque no fuera presentado al banco para su cobro. Dicho cheque fue sustituido en tres ocasiones posteriores por cheques girados contra otros bancos. Al morir el Sr. Martínez, un hijo de éste trató de cobrar la deuda al querellado mediante la presentación de los cheques sin éxito alguno pues el querellado alegaba no contar con fondos para ello. El cheque fue presentado al Banco y devuelto por éste por fondos insuficientes. Finalmente el préstamo fue transigido con los miembros de la Sucesión Martínez por la mitad en 26 plazos mensuales.

## QUINTO CARGO

El querellado vendió una parcela de terreno que formaba parte de una finca de mayor cabida, recibió el precio de $4,000 pero no otorgó escritura de compraventa por no contar con el permiso de segregación de la Junta de Planificación. La finca principal estaba sujeta a un gravamen. Tanto el gravamen que por su origen tenía la parcela vendida como la falta del permiso de segregación, eran del conocimiento del comprador. Luego, el querellado canceló el referido gravamen pero constituyó otro. Con posterioridad (en 1968) logró segregar la parcela mencionada precedentemente y otorgó escritura a favor del comprador original haciendo constar que la finca estaba libre de gravamen. Al inscribir la compraventa, el Registrador hizo constar que estaba afecta por su procedencia a hipotecas por $25,000 y $35,000 respectiva-

mente. Seis años más tarde fue liberada la parcela en cuestión de ambas hipotecas.

## SEXTO CARGO

En 1959 el querellado vendió una parcela de terreno que formaba parte de una finca de mayor cabida recibiendo en el acto el importe del precio. El querellado informó al comprador querellante que no podría otorgar la escritura de traspaso de título hasta dos años más tarde por estar la finca principal sujeta a un gravamen hipotecario. En 1961 el querellado vendió a los mismos compradores otra parcela colindante. En 1964 los compradores exigieron que se les otorgara el título sobre las dos parcelas pero no tuvieron éxito. En 1965 el querellado canceló el gravamen de la finca principal y constituyó dos gravámenes adicionales por $25,000 y $35,000 respectivamente, esto sin conocimiento de los referidos compradores, aunque el acreedor hipotecario sí sabía que las dos parcelas en cuestión estaban comprometidas por lo que se proponía liberarlas del gravamen oportunamente. En 1968, cuatro años después de exigir los compradores que se le traspasara el título, la Junta de Planificación autorizó la segregación y se otorgó la escritura de compraventa correspondiente en la que se declaraba que la parcela vendida estaba libre de gravámenes cuando lo cierto era que estaba gravada con las dos hipotecas que se relacionan precedentemente. En 1973 el acreedor hipotecario instó acción de ejecución de hipoteca e incluyó a los compradores como demandados; aunque luego desistió de la acción contra los compradores y la prosiguió contra el querellado y esposa, obteniendo el acreedor sentencia a su favor. En 1974 las parcelas de los compradores fueron liberadas de la hipoteca que las gravaba.

## SEPTIMO CARGO

El querellado vendió por documento privado en 1963 una parcela de una finca de mayor cabida, estando la finca gra-

vada y sin obtener permiso de segregación de la Junta de Planificación. La compradora tenía conocimiento de la situación. La compradora construyó una casa en dicho solar con dinero de unos menores con autorización judicial. En 1969 el querellado y su esposa, al no poder satisfacer el gravamen de la finca, vendieron ésta a un tercero. Este sabía del compromiso de segregar la parcela de la compradora original y de la correspondiente liberación de la parcela de la hipoteca que la gravaba por su origen. En 1975, a la fecha de la vista de esta querella, aún no se había logrado la segregación de la parcela en cuestión, aunque el dueño actual ha manifestado que se propone tomar la acción necesaria a fin de que la compradora original obtenga título.

### OCTAVO CARGO

El querellado adeuda a Hipólito Torres la suma de $20,000, representada la obligación por un pagaré vencido en 6 de julio de 1970. En vista del incumplimiento del querellado a pesar de las gestiones extrajudiciales de los herederos del acreedor, éstos instaron acción en su cobro, y obtuvieron sentencia en rebeldía en 18 de julio de 1971. Se ordenó la ejecución de la sentencia y el embargo de bienes del querellado.

Como parte de este cargo se relacionan una serie de obligaciones hipotecarias constituidas o asumidas por el querellado y su esposa sobre distintas propiedades inscritas a su nombre ascendentes a $360,000.

Las conclusiones generales expuestas por el Comisionado Especial luego de concluir las vistas celebradas son las siguientes:

"El Lcdo. Pedro Roldán Figueroa, fue admitido a la práctica de la abogacía por el Tribunal Supremo de Puerto Rico, el día 19 de septiembre de 1949 y autorizado a practicar el Notariado el 13 de octubre de 1949. Ha tenido oficinas de abogado en los pueblos de San Lorenzo y Caguas.

Además de la práctica de la profesión de abogado y notario, se dedicó a la agricultura, cría y compraventa de ganado y otros tipos de negocios. Adquirió varias fincas y en una ocasión llegó a tener más de 600 cuerdas de terreno. La casi totalidad de estas tierras las adquirió a crédito y para sus negocios tomaba a préstamos grandes cantidades de dinero.

Por su desconocimiento del arte de la agricultura y el negocio de ganado, la mala administración de sus negocios, la imprevisión y por otras razones, fracasó totalmente en sus negocios.

En una ocasión sus deudas alcanzaron la suma de $1,300,-000.00, por concepto de compra de fincas, hipotecas y dinero tomado a préstamo.

Desde el año de 1960 comenzaron sus serios problemas económicos y al no poder pagar sus compromisos económicos inició una cadena de tomar prestado a unos para poder pagar a otros.

Para el año 1968 su situación económica era precaria y no podía pagar sus deudas. Para el mes de noviembre de 1974, adeudaba alrededor de $450,000.00 de los cuales, una parte están garantizados con hipotecas que gravan las pocas propiedades que aún le quedan. A la fecha de la vista de esta querella las deudas que no están garantizadas con hipotecas, ascienden a la suma de $150,000.00.

Como solución a sus problemas económicos, amigos del querellado le aconsejaron que se declarase en quiebra, consejo que finalmente rechazó.

En la práctica de su profesión de abogado en los Tribunales de Puerto Rico, según el decir de los Honorables Jueces José Villares Rodríguez, Carlos Bastián Ramos y Ricardo Jordán, el querellado ha observado una conducta intachable, ha sido celoso en el desempeño de sus funciones y respetuoso con el Tribunal."

### VIOLACION A CANONES DE ETICA PROFESIONAL

Los cuatro primeros cargos contra el querellado Pedro Roldán Figueroa envuelven la relación de éste con ciertos clientes a saber: doña Carmen Lucila Gutiérrez, don Natalio Pagán Oquendo, doña Dionisia Velázquez de Cotto, don Fructuoso Martínez y los herederos de éste.

Los siguientes cuatro cargos se refieren a ciertos negocios efectuados por el querellado con varios ciudadanos amigos

que depositaron su confianza en aquél en relación con transacciones de compra y venta de fincas y de préstamos de dinero que produjeron consecuencias perjudiciales que el querellado debió haber anticipado.

El criterio general expresado en los Cánones de Ética Profesional relativo a los deberes del abogado para con sus clientes exige que la relación de abogado y cliente debe fundamentarse en la absoluta confianza entre ambos y por tanto requiere un trato profesional caracterizado por la más devota lealtad y la más completa honradez. Más específicamente, el Canon 23 de los de Ética Profesional establece que la naturaleza fiduciaria de las relaciones entre abogado y cliente exige que éstas estén fundadas en la honradez absoluta, y en particular, debe darse cuenta del dinero u otros bienes del cliente que vengan a su posesión y no debe mezclarlos con sus propios bienes ni permitir que se mezclen.

Más aún, el Canon 37 expresa que la participación del abogado en negocios o actividades de venta de bienes u otros servicios comerciales propios o pertenecientes a otras personas no es una actividad propia de la buena práctica de la profesión si tal negocio o actividad tiene el fin directo o indirecto de proporcionarle trabajo profesional lucrativo que de otra forma el bufete no hubiese obtenido.

Y, el Canon 38 subraya que el abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. Y recalca que por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable.

Finalmente el Canon 37 formula una máxima que debe emular un abogado al declarar que la mejor y más meritoria publicidad para un letrado es el hacerse acreedor de una

reputación bien cimentada de capacidad profesional y confianza como resultado del ejercicio legítimo de su profesión.

Un examen minucioso de las transacciones y actuaciones del querellado contenidas en los ocho cargos que exponemos y discutimos precedentemente, a la luz de las conclusiones generales a que llega el Comisionado Especial, revela un patrón de conducta seguido por el querellado en la obtención de préstamos de dinero y transacciones comerciales con clientes y amigos en conexión con los negocios personales del querellado, sin éste divulgar debidamente en todos los casos sus embrollos económicos, que no le permitían cumplir sus promesas debidamente, lo cual le coloca en una situación delicada y difícil frente a los Cánones de Ética Profesional que hemos enumerado y que no es necesario analizar dada la clara violación de los mismos.

■ Entendemos que ninguna de las violaciones incurridas por el querellado constituyen torpeza moral o falta de integridad pero sí señalan una desviación de las normas de conducta profesional que debe observar puntillosamente todo el que tiene el privilegio de ejercer la noble profesión de abogado.

*En vista de lo expuesto concluimos que debemos imponer al querellado una suspensión del ejercicio de la profesión de abogado por el término de un año.*

El Juez Asociado Señor Díaz Cruz emitió opinión concurrente. El Juez Asociado Señor Martín impondría una suspensión más severa y el Juez Asociado Señor Negrón García impondría una suspensión indefinida. Los Jueces Asociados Señores Torres Rigual e Irizarry Yunqué no intervinieron.

—O—

Opinión concurrente del Juez Asociado Señor Díaz Cruz.

San Juan, Puerto Rico, a 6 de mayo de 1977

Concurro en la opinión porque la sanción propuesta re-

fleja una estimación justa del agravio ético envuelto en este caso.

Las conclusiones del Comisionado, sostenidas por la prueba, no van más allá de señalar al querellado como abogado que se aventuró en negocios de agricultura y ganado, los cuales desconocía, y careciendo de capital recurrió al método consagrado como hábito nacional de tomar cuantiosos préstamos por lo que en una ocasión sus deudas montaban a $1,300,000, que lográ reducir a $450,000 para noviembre de 1974, garantizadas con hipoteca (excepto la cantidad de $150,000), sobre lo que resta de su empresa de iluso. El informe también concluye que "en la práctica de su profesión de abogado en los Tribunales de Puerto Rico, el querellado ha observado una conducta intachable, ha sido celoso en el desempeño de sus funciones y respetuoso con el Tribunal."

La falta de este abogado estriba en haber utilizado su relación profesional con sus clientes como medio, en algunos casos coactivo, para levantar fondos para sus empresas particulares. Sin embargo, su conducta no acusa fraude, ni engaño ni otro tipo de corrupción. Con la entereza de un capitán de leyenda, cuando vino el fracaso se hundió con su barco, rechazando el alivio y la protección de la Ley de Quiebras a la que acuden sin inhibiciones y sin estigma tantos hombres de negocios. No creo que una sociedad que mantiene como premisa inviolable que nadie será encarcelado por deuda pueda esperar un castigo aún más penoso que la cárcel para el deudor por el hecho de ser éste abogado. No puede convertirse el problema ético en ecuación abstracta perdiendo de vista el sufrimiento de los seres humanos.

En vez de separación, estimo correctamente limitada la sanción contra el querellado a un año de suspensión en el ejercicio de la profesión de abogado.