EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | Querella |
|--------|----------|
| Carmen Astacio Caraballo | 2000 TSPR 11 |

Número del Caso: CP-1998-0013

Fecha: 12/08/1999

Oficina del Procurador General: Lcda. Ivonne Casanova Pelosi
                                Procuradora General Auxiliar

Abogada de la Parte Querellada: Lcda. Noemi Caraballo López

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

In re:

Carmen Astacio Caraballo                    CP-98-13


PER CURIAM

San Juan, Puerto Rico a 8 de diciembre de 1999


El 15 de enero de 1991, el Sr. Horacio Rivera Nieves, rival político de la Lcda. Carmen Astacio Caraballo, radicó una queja en contra de ésta ante la Oficina del Procurador General. En síntesis, alegó que, dos años y medio antes, dicha abogada había hecho manifestaciones falsas ante un tribunal de justicia. El 14 de marzo de 1991, el entonces Director de la Oficina de Administración de los Tribunales, Hon. René Arrillaga Beléndez, compareció igualmente ante la Oficina del Procurador General en solicitud de que se investigara la actuación de la referida abogada.

El 6 de noviembre de 1998, en cumplimiento de nuestra Resolución de fecha 28 de septiembre de 1996, el Procurador General presentó querella contra la Lcda. Astacio, imputándole los siguientes cargos:

"CARGO I

La Lcda. Carmen Astacio Caraballo violentó los principios establecidos por el Canon 35 de Ética Profesional el cual, entre otras cosas, obliga a todo abogado a ser sincero y honrado y a utilizar ante los tribunales medios consistentes con la verdad y a no inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho.

CARGO II

La Lcda. Carmen Astacio Caraballo violentó los principios establecidos por el Canon 38 de Ética Profesional el cual, entre otras cosas, obliga a todo abogado a esforzarse al máximo de su capacidad a la exaltación del honor de tal profesión, aportara la mejor administración de la justicia y a comportarse tanto en su vida privada como profesional en forma digna y honrada."

Contestada la querella, nombramos Comisionado Especial al ex-Juez Superior, Hon. Angel G. Hermida, para que presidiera una vista probatoria y rindiera un informe con las determinaciones de hecho que entendiera procedente. A continuación, exponemos los hechos que surgen de la relación del caso y de las determinaciones de hechos del Comisionado Especial, así como de los autos del Caso Civil Núm. RF (F) 88-148, sobre divorcio, entre la Lcda. Astacio y el señor José A. Pacheco, promovido ante el Tribunal Superior, Sala de Humacao.


I

La Lcda. Astacio  fue admitida por este Tribunal al ejercicio de la profesión legal el 3 de mayo de 1980. El 10 de junio del mismo año, le fue expedida autorización para el ejercicio del notariado.

La abogada querellada estuvo casada con el Sr. José A. Pacheco por más de 25 años, procreando dos hijos en el matrimonio. En 1988, la querellada presentó demanda de divorcio contra su esposo, por la causal de separación, ante el entonces Tribunal Superior de Puerto Rico, Sala de Humacao. El 20 de mayo de 1988, el Juez Raúl Ferrer Babilonia dictó

sentencia, declarando roto y disuelto el matrimonio entre la abogada de epígrafe y el señor Pacheco.

Casi dos meses después, el 12 de julio de 1988, la Lcda. Astacio presentó una moción ante el foro de instancia solicitando se dejase sin efecto la mencionada sentencia[1], ya que alegadamente el Sr. Pacheco y ella habían zanjado sus diferencias y se habían reconciliado. En dicha moción, la mencionada abogada no hizo constar que el demandado, Sr. Pacheco, había fallecido cinco días antes de presentada la misma.

Debe señalarse que la referida abogada, estaba impedida de solicitar, y el Juez de conceder, el remedio mencionado, puesto que la Regla 49.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R.49, sobre moción de relevo de sentencia, establece que:

> "Mediante moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las siguientes razones:
> (1) Error, inadvertencia, sorpresa o negligencia excusable;
> (2) Descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;
> (3) Fraude (incluyendo el que hasta ahora se ha denominado intrínseco y también el llamado extrínseco), falsa representación u otra conducta impropia de una parte adversa;
> (4) Nulidad de la sentencia;
> (5) La sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continuara en vigor; O
> (6) Cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.
> Las disposiciones de esta regla no serán aplicables a las sentencias dictadas en pleitos de divorcio, a menos que la moción se funde en las razones (3) ó (4)..." (Énfasis suplido.)

A pesar de las expresas disposiciones en contrario, de la transcrita Regla 49.2, el Juez concedió a la Lcda. Astacio el relevo de sentencia solicitado por ella.

El 9 de junio de 1989, la Lcda. Astacio, en calidad de viuda, y sus hijos, presentaron demanda ante el tribunal de instancia en reclamación

---

[1] Esta sentencia había advenido final y firme debido a que habían transcurrido los treinta (30) días para solicitar su revisión.

de los daños y perjuicios que alegadamente sufrieron por el fallecimiento del Sr. Pacheco, el cual, supuestamente, se debió a la impericia médica de los allí demandados; reclamaron, además, los sufrimientos y angustias mentales que sufrió el señor Pacheco mientras estuvo recluido en los hospitales demandados. La parte demandada solicitó la desestimación de la reclamación instada por la Lcda. Astacio Caraballo, alegando que ella no era viuda sino divorciada.

La Lcda. Astacio, en su contestación a la querella radicada por el Procurador General, alegó que "los hechos en el presente caso tienen su explicación y le manifiesta al Honorable Tribunal que no medió intención alguna de violar los Cánones número 35 y 38 de Etica mencionados en la querella, toda vez que a lo largo de su carrera profesional ha demostrado responsabilidad, honradez y sinceridad en el desempeño de sus funciones". Expuso, además, que "como profesional de la práctica del derecho, se ha esforzado en brindar sus servicios y dirigir sus capacidades hacia los servicios legales de los desvalidos y necesitados, honrando la profesión, en ocasiones sin recibir remuneración alguna ... siendo reconocidos sus servicios como abogada del año de Pro Bono en varias ocasiones... ".

Expuso la querellada que, al momento del fallecimiento de su ex-esposo, ambos continuaban conviviendo como esposos y habían acordado "retirar la sentencia de divorcio" y continuar su matrimonio. Según manifiesta la abogada querellada, la moción solicitando el retiro de sentencia fue redactada entre ambos antes de la muerte del Sr. Pacheco, y fue firmada por la querellada, quedando la moción en su oficina a cargo de su secretario[2]. Alegadamente, al fallecer su esposo, la abogada no regresó durante esos días a su oficina, por hallarse en un estado de depresión; indica la querellada que la moción se radicó por error o

---

[2] Es de notar, sin embargo, que en una declaración jurada sometida con anterioridad ante la Oficina del Procurador General, de fecha 15 de febrero de 1991, la querellada aseveró que la moción fue hecha después de la muerte del Sr. Pacheco, en cumplimiento de una promesa hecha a éste poco antes de su muerte.

inadvertencia de su secretario, quien escribió la fecha y la presentó ante el tribunal sin percatarse del contenido de la misma.

Expresó, además, la Lcda. Astacio que no tenía intención de defraudar o de obtener ventaja alguna, al radicar el caso Sucn. Pacheco v. Eastern Med. Assoc., Inc., res. el 6 de abril de 1994, 135 D.P.R. ___ (1994), ya que, a la fecha de los hechos, la Sociedad Legal de Gananciales no había sido liquidada sino que ambos estaban bajo el control y administración de sus bienes y ambos aportaban con sus respectivos ingresos a los bienes en común.

Luego de evaluar toda la evidencia disponible, el Comisionado Especial quedó "convencido" de que la Lcda. Astacio, en efecto, se había reconciliado con su marido, y de que ésta actuó, como lo hizo, únicamente para dar efecto jurídico a dicha reconciliación, y para cumplir con la promesa hecha a su ex-esposo en su lecho de muerte[3]. En cuanto a la presentación de la demanda de daños y perjuicios, el Comisionado Especial llegó a la conclusión de que cuando la Lcda. Astacio solicitó del tribunal de instancia que se dejara sin efecto la sentencia de divorcio, no lo hizo en consideración a la posterior presentación de esa reclamación ni de los beneficios económicos que podría obtener con ella[4].

Estando en condiciones de resolver, procedemos a así hacerlo.

II

Discutimos, de manera conjunta, los dos cargos imputados. El primer cargo imputa a la querellada una violación al Canon 35 por ocultar la verdad e inducir a error al juzgador al presentar una moción de relevo de sentencia ante el tribunal sin hacer constar en la misma que la parte demandada había muerto. Mediante el segundo cargo se le imputa a ésta haber violentado los principios del Canon 38, por haber atentado contra el honor y la dignidad de la profesión de abogado.

---

[3] Informe del Comisionado, pág. 4.
[4] Informe del Comisionado, pág. 6.

El Canon 35 de Ética Profesional, 4 L.P.R.A., Ap. IX, C. 35, establece lo siguiente:

"La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.

No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. Es impropio variar o distorsionar las citas jurídicas, suprimir parte de ellas para transmitir una idea contraria a la que el verdadero contexto establece u ocultar alguna que le es conocida.

El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávit u otros documentos, y al presentar causas. El destruir evidencia documental o facilitar la desaparición de evidencia testifical en un caso es también altamente reprochable." (Énfasis suplido.)

Por otro lado, el Canon 38 de Ética Profesional, 4 L.P.R.A., Ap. IX, C. 38, establece:

"El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. En su conducta como funcionario del tribunal, deberá interesarse en hacer su propia y cabal aportación hacia la consecución de una mejor administración de la justicia...

Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable...". (Enfasis suplido.)

El Canon 35, como vemos, impone al abogado un deber de sinceridad y honradez *erga omnes*. *In re* Franco Rivera y Masini Soler, 134 D.P.R. 823 (1993). Esto significa que este deber lo tiene el abogado frente a todos, tanto ante sus representados como en las relaciones con sus compañeros de profesión y, por supuesto, ante los tribunales.[5] Los abogados han de conducirse siempre con integridad ante los foros judiciales. *In re* Currás Ortiz, res. el 13 de agosto de 1996, 141 D.P.R. __ (1996). El abogado no puede proveer al tribunal información

---

[5] *In re* Marrero Figarella, res. el 13 de julio de 1998, 98 TSPR 112; *In re* Tormos Blandino, res. el 28 de marzo de 1994, 135 D.P.R. __ (1994). *In re* Rivera Arvelo y Ortiz Velázquez, 132 D.P.R. 840 (1993).

falsa o que no se ajuste a la verdad, ni puede tampoco ocultarle información certera que deba ser revelada. *In re* Filardi Guzmán, res. el 23 de enero de 1998, 98 TSPR 4.

La conducta de todo abogado ante los tribunales debe ser una caracterizada por sinceridad y honradez, y no actúa profesionalmente el abogado que no se ajusta a la verdad de los hechos al presentar las causas. *In re* Peña Clós, res. el 29 de marzo de 1994, 135 D.P.R. __ (1994); *In re* Enríquez González, 92 D.P.R. 544 (1965). Los abogados no pueden suscribir con su firma hechos falsos[6], debiendo ser fieles a la realidad de los hechos al redactar o suscribir documentos.[7]

Hemos expresado, en ocasiones anteriores, que la firma de un abogado en una moción tiene el efecto legal de un juramento[8], y la declaración bajo juramento de hechos falsos constituye una violación al Canon 35 de Ética Profesional. El abogado que así actúa, quebranta además el principio ético proclamado en el Canon 38, *supra*, que exige al abogado esforzarse al máximo de su capacidad en la exaltación del honor y dignidad de la profesión.

Estas normas de conducta deben ser observadas por los abogados no sólo en su dimensión profesional, sino en todas las demás facetas de su vida privada.[9] Estos deberes tienen que ser cumplidos aunque, el así

---

[6] *In re* John T. Belk Arce y Margarita Serapión, res. el 28 de julio de 1999, 99 D.P.R.TSPR 121; *In re* Martínez, Odell, res. el 12 de abril de 1999, 99 TSPR 53; Alonso García v. Comisión Industrial, 102 D.P.R. 752 (1974).

[7] *In re* López de Victoria Bras, res. el 6 de abril de 1994, 135 D.P.R. __ (1994); *In re* Del Río Rivera y Otero Fernández, 118 D.P.R. 339 (1987); *In re* Rivera Arvelo y Ortiz Velázquez, ante.

[8] La Regla 9 de las de Procedimiento Civil, 32 L.P.R.A. , Ap. III R. 9, establece, entre otras cosas, lo siguiente: "...La firma de un abogado equivale a certificar el haber leído el escrito; que de acuerdo con su mejor conocimiento, información y creencia está bien fundado; y que no ha sido interpuesto para causar demora u opresión. Si un escrito no estuviere firmado, o lo hubiere sido con el propósito de frustrar los objetivos de esta regla, podrá ser eliminado como simulado y falso, y el pleito podrá continuar como si no se hubiere notificado tal escrito. La violación voluntaria de esta regla por parte de un abogado dará lugar a la imposición de sanciones en su contra...". Junta Insular de Elecciones v. Corte, 63 D.P.R. 819 (1944).

hacerlo, conlleve sacrificios personales. *In re John T. Belk Arce y Margarita Serapión*, ante; *In re Roldán Figueroa*, 106 D.P.R. 4 (1977). No puede un abogado acudir al sistema de administración de justicia si, al así hacerlo, y con el fin de adelantar sus propios intereses, falta a la verdad. *In re Filardi Guzmán*, ante.

Debemos recordar, por último, que se infringe el deber impuesto por el Canon 35 con el simple <u>hecho objetivo de faltar a la verdad</u>, lo cual supone una conducta lesiva a las instituciones de justicia, <u>independientemente de los motivos para la falsedad</u>. Véase: *In re John T. Belk Arce y Margarita Serapión*, ante. Para incurrir en esta falta, no es necesario que se haya faltado a la verdad deliberadamente o de mala fe, con la intención de defraudar o engañar. *In re Martínez, Odell*, ante; *In re Chaar Cacho*, 123 D.P.R. 655 (1989); *In re Rivera Arvelo y Ortiz Velázquez*, ante. Tampoco es necesario para violar el Canon 35 que se produzca un perjuicio a tercero. *In re John T. Belk Arce y Margarita Serapión*, ante. *In re Martínez, Odell*, ante. No obstante, estas circunstancias podrían, junto con otras, ser pertinentes a la hora de determinar la sanción disciplinaria que ha de imponerse al abogado. *In re López de Victoria Brás*, ante; *In re Peña Clós*, ante; *In re Martínez, Odell*, ante.

Con lo anterior en mente, examinemos los hechos que, conforme al Informe del Comisionado[10], motivaron la presente querella.

---

[9] *In re Roldán Figueroa*, ante; *In re López de Victoria Brás*, ante; *In re Currás Ortiz*, ante; *In re John T. Belk Arce y Margarita Serapión*, ante; *In re Martínez, Odell*, ante. *In re Padilla Rodríguez*, res. el 18 de mayo de 1998, 98 TSPR 56.

[10] Tomamos como base los hechos que aparecen en este Informe, puesto que, como hemos repetido en diversas ocasiones, en ausencia de prejuicio, parcialidad o error manifiesto del Comisionado Especial al apreciar la prueba, no alteraremos las determinaciones de hechos que están sostenidas por la prueba testifical y documental. R.41.5(b) de Procedimiento Civil, 32 LPRA Ap. III, R.41.5(b). *In re Rivera Arvelo y Ortiz Velázquez*, ante. *In re Soto López*, res. el 5 de abril de 1994, 135 D.P.R. __ (1994). *In re Marrero Figarella*, ante.

## III

En el caso de autos, la Lcda. Astacio presentó, ante el antiguo Tribunal Superior, Sala de Humacao, una improcedente moción de relevo, firmada por ella únicamente, solicitando se dejara sin efecto el divorcio decretado entre la abogada y su ex-esposo, el Sr. Pacheco. Como hemos dicho anteriormente, la Lcda. Astacio radicó dicha moción, aún cuando obviamente sabía que el Sr. Pacheco había fallecido cinco (5) días antes. La abogada no informó en ningún momento al tribunal de la muerte de su ex-esposo.

Al no comunicar este hecho al tribunal, la abogada ocultó información certera que debió ser revelada, puesto que un tribunal no puede intervenir con el estado civil de un fallecido. Como es sabido, la muerte de cualquiera de los cónyuges extingue la acción para anular el divorcio, perdiendo el tribunal la jurisdicción sobre la persona fallecida. Pardos v. Sucn. Stella, res. el 17 de junio de 1998, 98 TSPR 77; Hernández v. Zapater, 82 D.P.R. 777 (1961). El estado civil es un atributo fundamental de la persona. Esto significa que solo la persona puede cambiar su propio estado civil y que, como regla general, nadie puede disponer libremente del mismo sin que la persona intervenga. Sucn. Pachecho v. Eastern Med. Assoc., Inc., ante, citando a J. Puig Brutau, Fundamentos de Derecho Civil, Barcelona, Bosch, 1979, T. I, Vol. I, págs. 307-308.

La Lcda. Astacio, no hay duda, faltó a su deber de sinceridad para con el tribunal, lo cual indujo a error al mismo. No cabe duda de que esta acción constituyó una conducta impropia y violatoria del Canon 35, supra, así como un quebrantamiento del principio recogido en el Canon 38, supra, que exige al abogado esforzarse en exaltar el honor y la dignidad de la profesión de abogado.

Conforme al Informe del Comisionado[11], éste quedó "plenamente convencido" de que la moción de relevo de sentencia fue presentada por

---

[11] Pág. 4, apartado 2.5.

la Lcda. Astacio con la única intención de dar efecto jurídico a la reconciliación que había tenido lugar entre ambos cónyuges antes de la muerte del esposo, y en cumplimiento de una promesa hecha a éste en su lecho de muerte.[12] Aparte del hecho que esta posición es un tanto difícil de aceptar, como hemos anteriormente expresado, el motivo tras la actuación no es determinante a la hora de establecer si se violaron los Cánones 35 y 38. Véase: *In re* John T. Belk Arce y Margarita Serapión, ante.

Ello no obstante, tanto los motivos, como el previo historial del abogado; su buena reputación en la comunidad y el hecho de que se trate de su primera falta; y la ausencia de perjuicio a terceros, son circunstancias que, entre otras, este Tribunal acostumbra considerar al determinar la sanción disciplinaria a imponerse a un abogado.[13]

Por consiguiente, en vista de que es la primera falta cometida por la abogada querellada durante los dieciocho (18) años que ha ejercido la abogacía; teniendo en cuenta que no ha resultado perjudicado tercero alguno; y considerando que el motivo que llevó a la Lcda. Astacio a cometer esta falta, conforme la determinación del Comisionado Especial, no fue el de defraudar u obtener un beneficio propio, sino el de hacer cumplir la "última voluntad" de su marido, dando efecto jurídico a su reconciliación, procede que, como hemos hecho en situaciones similares[14], limitemos en esta ocasión la sanción disciplinaria a una censura enérgica de la Lcda. Astacio por su conducta. Se le apercibe,

---

[12] En una declaración jurada de fecha 15 de febrero de 1991, la Lcda. Astacio manifestó que ella y su ex-esposo se reconciliaron y acudieron a la residencia de la Juez Ana Delia Sánchez el 24 de junio de 1988, solicitándole que celebrara su matrimonio; y que fue mientras preparaban la documentación necesaria el Sr. Pacheco enfermó y fue recluido en el Hospital. No obra en nuestro poder, sin embargo, declaración alguna de la Juez Sánchez que corrobore estos hechos.

[13] *In re* Calderón Marrero, 122 D.P.R. 557 (1988); *In re* Rivera Arvelo y Ortiz Velázquez, ante; *In re* Bermúdez Rivera, 123 D.P.R. 615 (1989). *In re* López de Victoria Brás, ante; *In re* Peña Clós, ante; *In re* Vargas Hernández, res. el 30 de marzo de 1994, 135 D.P.R. ___ (1994). *In re* T. Belk Arce y Margarita Serapión, ante.

[14] *In re* Padilla Rodríguez, ante; *In re* Martínez, Odell, ante; *In re* John T. Belk Arce y Margarita Serapión, ante.

sin embargo, de que en el futuro deberá ejercer mayor diligencia en sus actuaciones y dar fiel cumplimiento a los Cánones de Ética Profesional que rigen la profesión de abogado, pudiendo ser objeto de sanciones disciplinarias más severas si vuelve a infringir los mismos.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

**In re:**

**Carmen Astacio Caraballo**                    **CP-98-13**

**SENTENCIA**

**San Juan, Puerto Rico a 8 de diciembre de 1999**

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia censurando enérgicamente, por su conducta, a la Lcda. Carmen Astacio Caraballo; apercibiendo a ésta para que en el futuro ejerza mayor diligencia en sus actuaciones y dé fiel cumplimiento a los Cánones de Etica Profesional que rigen la profesión de abogado.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Andréu García no intervino.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo