EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:<br><br><br><br>Walter Alomar Santiago<br>(TS-8,157) | 2023 TSPR 16<br><br>211 DPR ___ |
|---|---|

Número del Caso: AB-2022-0019

Fecha: 16 de febrero de 2023

Oficina de Inspección de Notarías:

    Lcdo. Manuel E. Ávila De Jesús
    Director

Abogado del promovido:

    Por derecho propio

Materia: Conducta Profesional – Suspensión inmediata de la práctica de la notaría por el término de seis meses por infringir los Arts. 2, 12 y 39 de la Ley Notarial; las Reglas 12 y 49 del Reglamento Notarial y los Cánones 18, 35 y 38 del Código de Ética Profesional.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Walter Alomar Santiago    AB-2022-0019    Queja
    (TS-8,157)

*PER CURIAM*

En San Juan, Puerto Rico, a 16 de febrero de 2023.

El Lcdo. Walter Alomar Santiago (licenciado Alomar Santiago) fue admitido al ejercicio de la abogacía el 10 de enero de 1986 y a la práctica de la notaría el 3 de marzo del mismo año.

I.

El 22 de febrero de 2022 la Sra. Carmen M. Sánchez Álamo presentó una *Queja* contra el licenciado Alomar Santiago en la que alegó que contrató los servicios del letrado para formalizar el proceso de inscripción de la propiedad inmueble en la que residía con su esposo, el Sr. José Antonio Ortiz Ramos (señor Ortiz Ramos)(en conjunto matrimonio Ortiz-Sánchez).

La propiedad del matrimonio Ortiz-Sánchez ubica sobre el inmueble en el cual residían el Sr. Miguel Ortiz Dávila y la Sra. Dominga Ramos Ocasio, suegros de la quejosa. Entretanto, la Sra. Juana Ortiz Ramos, casada con el Sr. Jesús González Medina, reside en un inmueble construido en la propiedad aledaña de los suegros de la señora Sánchez Álamo. Previamente, mediante la Escritura Núm. 46 de 1 de noviembre de 1989 otorgada ante la Lcda. María Victoria Jiménez Maldonado se recogió el derecho de superficie del inmueble del matrimonio Ortiz-Sánchez. Igualmente, la misma notaria autorizó la Escritura Núm. 49 de *Acta de construcción en suelo ajeno* para detallar que el matrimonio González-Ortiz construyó el inmueble en que residían de su peculio. Al cabo de varios años, entre 1994 y 1998, respectivamente, los suegros de la señora Sánchez Álamo fallecieron y todos los herederos, incluso la Sra. Juana Ortiz Ramos, decidieron ceder sus respectivas participaciones hereditarias al señor Ortiz Ramos.

Para mayo de 2010, el matrimonio Ortiz-Sánchez procuraba gestionar la inscripción de las propiedades a nombre de sus respectivos dueños a través de la licenciada Jiménez Maldonado. No obstante, lo atendió el licenciado Alomar Santiago quien se puso a su disposición para tramitar las inscripciones de sus propiedades y la del inmueble del matrimonio González-Ortiz en el Registro de la Propiedad. Según alegó la quejosa, el letrado le cobraría $4,500 y que la referida cuantía podía pagarse poco a poco. Además, el abogado le solicitó y se le entregó los documentos de rigor para poder ejecutar la encomienda.

Transcurridos varios años sin recibir noticias del licenciado Alomar Santiago con relación a la gestión por la que resultó contratado, en el 2014 los esposos Ortiz-Sánchez dejaron de abonarle dinero al letrado.

A raíz de varios intentos para conseguir al licenciado Alomar Santiago, el matrimonio Ortiz-Sánchez se comunicó con la oficina del abogado y cuestionaron la tardanza injustificada del trámite. Para finales de 2020, el licenciado Alomar Santiago citó a la señora Sánchez Álamo para leerle la Escritura Núm. 104 de 18 de noviembre de 2019 (Escritura Núm. 104) que había preparado. Sin embargo, según afirmó la quejosa, el abogado solo leyó las porciones que él entendió pertinentes, brincó páginas, no le explicó los pormenores y le solicitó que le devolviera la copia que le entregó para el ejercicio de la lectura. La señora Sánchez Álamo permaneció con el duplicado y, ante su desconcierto, compartió lo sucedido con otros abogados quienes se percataron que la Escritura Núm. 104 era una *Compraventa* en la que no firmaron los otorgantes y que la titularidad de la propiedad constaba inscrita únicamente a nombre del matrimonio Ortiz-Sánchez. De esta manera, peticionó la corrección de las constancias en el Registro con relación a los inmuebles de ambos matrimonios.

Una vez presentada la *Queja*, y luego de requerir varias prórrogas, el licenciado Alomar Santiago contestó la misma el 26 de mayo de 2022. Allí aceptó que recibió $3,000 y alegó que los devolvería. Esgrimió que entendía que había entregado los documentos que estaban en su poder, pero continuaría en la

búsqueda correspondiente. Admitió que el señor Ortiz Ramos ni la señora Sánchez Álamo ni los suegros de esta firmaron el instrumento público porque se presentó por error e inadvertencia un borrador de la escritura. Reconoció que el instrumento público era nulo *ab initio* y que solicitaría al tribunal la nulidad de cualquier anotación existente o vigente en el Registro de la Propiedad. A su entender, la quejosa no sufrió daños por la confusión que creó el borrador de escritura que presentó por error. De esta manera solicitó la desestimación de la *Queja*.

Además de la contestación a la *Queja*, atendió un requerimiento de la Oficina de Inspección de Notarías (ODIN) en la que expuso que, a raíz de los sismos y la pandemia de inicios de 2020, estuvo alejado de la práctica legal en su oficina y en las dependencias gubernamentales. A esto añadió que, luego de que el Registro de la Propiedad le notificó que retirara la Escritura Núm. 106 de *Acta notarial para establecer el derecho de hogar seguro sobre el hogar principal y familiar* (Escritura Núm. 106 de Hogar Seguro) de 3 de diciembre de 2019, se percató de que por error presentó un borrador de escrituras, por lo que se concentró en atender el problema de ese instrumento público y no retiró la Escritura Núm. 104 de *Compraventa* que según alegó cometió el mismo error. Asimismo, reiteró que presentaría la acción judicial para la anulación de ambos instrumentos públicos.

El 15 de julio de 2022 se remitió el asunto a la ODIN y el 21 de octubre de 2022 nos presentó un *Informe* en el que

concluyó que el licenciado Alomar Santiago infringió los Arts. 2, 12, 39 de la Ley Notarial de Puerto Rico, 4 LPRA secs. 2013, 2023 y 2061; las Reglas 12 y 49 del Reglamento Notarial, 4 LPRA Ap. XXIV y con la conducta desplegada violentó los estándares éticos de los Cánones 18, 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX. Lo anterior al empeñar la fe pública notarial y faltar a la verdad al certificar en una copia de los instrumentos públicos, con su firma y sello notarial, que en el original de las "escrituras públicas": (1) aparecían las firmas de personas que no comparecieron ante su presencia para otorgar el instrumento público; (2) estaban adheridos y cancelados los aranceles notariales de rigor; y (3) estaba firmado, signado, sellado y rubricado por el notario. Asimismo, notificó los dos instrumentos públicos en sus informes de actividad notarial mensual correspondientes a los meses de noviembre y diciembre de 2019, respectivamente en la que certificó bajo su fe notarial que comparecieron unas personas que no estuvieron ante él sobre negocios jurídicos que no se consumaron.

El 28 de noviembre de 2022 el licenciado Alomar Santiago presentó un documento intitulado *Comentarios al informe* mediante el cual aceptó la razonabilidad del *Informe* de la ODIN. Igualmente, coincidió con la sanción de seis meses que la ODIN propuso como alternativa. Apuntó que debía tomarse en consideración que era la primera falta en más de tres décadas de práctica notarial; la admisión de los hechos; la acreditación de la devolución de honorarios; la acreditación

de la presentación de la petición de nulidad de la Escritura Núm. 104 de *Compraventa* y de la Escritura Núm. 106 de *Hogar Seguro* y cualquier asiento registral vigente; la ausencia de beneficios económicos para el notario y la inexistencia de animosidad entre las partes.

El 23 de diciembre de 2022, el licenciado Alomar Santiago presentó una *Moción informativa* en la que anejó la *Resolución* de 16 de diciembre de 2022 del Tribunal de Primera Instancia, Sala Superior de Bayamón, con relación al caso Ex parte Carmen Sánchez Álamo y José Antonio Ortiz Ramos, Civil Núm. BY2022CV05885. Mediante el dictamen, el foro de instancia declaró con lugar la petición de nulidad de los referidos instrumentos públicos y ordenó al Registrador de la Propiedad, Sección IV de Bayamón, la anulación de la inscripción y cualquier asiento vigente de las aludidas escrituras.

## II

Sabido es que todo notario está inflexiblemente atado al cumplimiento cabal de la Ley Núm. 75 de 2 de julio de 1987, 4 LPRA sec. 2001 *et seq.*, conocida como Ley Notarial de Puerto Rico, al Reglamento Notarial de Puerto Rico, 4 LPRA Ap. XXIV, al Código de Ética Profesional, 4 LPRA Ap. IX, y a toda norma o reglamento concerniente a los deberes de los profesionales del Derecho que ejercen el notariado.[1]

---

[1] In re Santiago Rodríguez, 206 DPR 853, 858 (2021); In re Vázquez Margenat, 204 DPR 968, 977 (2020).

De acuerdo con el Art. 2 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2001,[2] el notario está facultado para dar fe y autenticar los negocios jurídicos y actos que se realicen en su presencia. En cuanto a la fe pública, el articulado señala que esta es plena y representa la ley entre las partes, por lo que se exige que -como custodio- el notario sea firme, celoso y estricto en su ejecutoria.[3] Claro está, la fe pública deja su plenitud cuando el notario no cumple con los requisitos de forma que postula el ordenamiento notarial.[4] Esto se debe a que, a través de la fe pública notarial, los notarios le dan forma legal a la voluntad de las partes y le confiere certeza y eficacia jurídica a los instrumentos públicos que prepare este profesional de Derecho.[5] Es decir, "[e]l trámite o '[e]l proceso de autenticar y otorgar instrumentos públicos válidos es producto del cumplimiento fiel y cabal de los notarios con 'los requisitos de la ley notarial referentes a [la] comparecencia, exposición, estipulaciones, otorgamiento y autorización' para cada negocio jurídico en que intervienen'".[6]

De otra parte, la identidad de una persona otorgante es uno de los requisitos neurálgicos para la autorización de un

---

[2] Ley Núm. 75 de 2 de julio de 1987, 4 LPRA sec. 2001 *et seq.*

[3] Art. 2 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2001; In re Vázquez Margenat, *supra*; In re Vázquez Pardo, 185 DPR 1031, 1040 (2012).

[4] In re Santiago Rodríguez, *supra*, 859.

[5] In re Salas Davis, 145 DPR 539, 544-545 (1998).

[6] In re Santiago Rodríguez, *supra*, págs. 859-860; In re García Cabrera, 201 DPR 902, 920-921 (2019); Sucn. Santos v. Registrador, 108 DPR 831, 834 (1979).

instrumento público.[7] Con la identificación estatutaria se alcanza la correspondencia real y legítima entre la persona otorgante y su firma en el instrumento público.[8]

En lo que respecta a la firma, el Art. 28 de la Ley Notarial, 4 LPRA sec. 2046 señala que los otorgantes tendrán que estamparla al final y, al margen de cada folio del instrumento público, inscribirán sus iniciales. Todo lo anterior se hará en presencia del notario para que, luego de ese ejercicio, este rubrique, signe y selle el documento público. A través de la firma se demuestra que los otorgantes aprobaron el texto que la precede, entre otros asuntos.[9] Por lo tanto, la omisión de la firma de los otorgantes es una falta notarial grave que transgrede la fe pública notarial y es causa de nulidad del instrumento público de que se trate.[10]

Por otro lado, de acuerdo con el Art. 39 de la Ley Notarial, 4 LPRA sec. 2061 y la Regla 19 del Reglamento Notarial, 4 LPRA Ap. XXIV, una copia certificada de una escritura pública acredita las constancias que aparecen en el instrumento público original atado al protocolo del notario. En la copia certificada el notario da fe de que en el original aparecen las iniciales y las firmas de las personas otorgantes y el notario la firma, signa, rubrica, estampa sello notarial

---

[7] In re Santiago Rodríguez, *supra*, pág. 860.

[8] *Íb*. Véase Art. 17(c) de la Ley Notarial, 4 LPRA sec. 2035.

[9] In re Fontánez Fontánez, 181 DPR 407, 419-420 (2011); In re Nieves Nieves, 171 DPR 843, 852 (2007); In re González Maldonado, 152 DPR 871 (2000).

[10] In re Fontánez Fontánez, *supra*, pág. 420; In re Vargas Cintrón, 153 DPR 520 (2001).

y cancela los aranceles de rentas internas y sellos notariales, entre otros.

De otra parte, todo notario sabe que el Art. 12 de la Ley Notarial, 4 LPRA sec. 2023 y la Regla 12 del Reglamento Notarial, *supra*, establecen que tiene los primeros diez días del próximo mes para remitir un informe mensual de sus actividades notariales del mes anterior. En lo concerniente a las escrituras públicas, y bajo la fe pública, firma y sello notarial, el notario informa el número y objeto de instrumento público o testimonio, la fecha, nombre de los comparecientes, la cuantía y testigos (si corresponde). Sobre este particular hemos expresado que "[l]a presentación de los índices sobre actividades notariales 'garantizan la certeza de los documentos en los que intervienen los notarios, y evitan el riesgo de manipulación y fraude'".[11] De manera que, como hemos sentenciado, el notario que autoriza un instrumento público sin la presencia de los otorgantes corrompe la fe pública notarial y constituye la certificación de un hecho falso que contraviene la Ley Notarial, *supra,* y el Reglamento Notarial, *supra*, además de que quebranta los Cánones 18, 35 y 38 del Código de Ética Profesional, *supra*.

En específico, del Canon 18 del Código de Ética Profesional, *supra*, emana la competencia y la diligencia que deben desplegar los profesionales del Derecho al momento de ejecutar las funciones que le imponen los cuerpos estatutarios

---

[11] In re Vázquez Margenat, *supra*, pág. 980; In re Santiago Ortiz, 191 DPR 950, 961 (2014).

y reglamentarios a los notarios. Asimismo, la sinceridad y la honradez son la médula del Canon 35 del Código de Ética Profesional, *supra*. De manera que la ejecutoria del notario tiene que "ajustarse a la sinceridad de los hechos […] al redactar afidávits y otros documentos[…]".[12] El Canon 35 del Código de Ética Profesional, *supra*, expresamente reprocha que un notario utilice medios que sean inconsistentes con la verdad, artificios o una relación de hechos o de derecho que sea falsa para inducir a error a un juzgador. La infracción a este canon no considera si el notario actuó con o sin intención.[13] En otras palabras, "no es defensa la ausencia de haber obrado de mala fe, deliberadamente o sin la intención de engañar como tampoco lo es que no se haya causado daño a un tercero".[14]

A tenor con lo señalado, del Canon 38 del Código de Ética Profesional, *supra*, surge la depuración del ejercicio de la profesión legal en cuanto a la rectitud y la transparencia que debe desplegar un abogado en el ministerio del notariado. Cuando un notario infringe los cánones 18 y 35 del Código de Ética Profesional, *supra*, definitivamente no exalta la profesión legal pues ha desempeñado la función pública del notariado con mediocridad y no con la cautela, el celo y la honradez que el ministerio demanda.

---

[12] In re Vazquez Margenat, *supra*, pág. 979; Canon 35 del Código de Ética Profesional, 4 LPRA Ap. IX.

[13] *Íb*., pág. 977; In re Vázquez Pardo, supra, págs. 1046-1047.

[14] In re Vázquez Pardo, *supra*; In Re Astacio Caraballo, 149 DPR 790, 799 (1999).

Por último, disciplinar a un profesional de Derecho requiere que evaluemos la conducta desplegada en conjunto con los factores siguientes:

(1) la reputación del abogado en la comunidad; (2) su historial previo; (3) si constituye su primera falta y si no ha causado perjuicio a alguna parte; (4) la aceptación y el arrepentimiento sincero por las imputaciones; (5) la defensa frívola de su conducta; (6) si se trata de una conducta aislada; (7) el ánimo de lucro, y (8) cualquier otra consideración atenuante o agravante aplicable a los hechos.[15]

## III

En la situación que nos ocupa, el licenciado Alomar Santiago fue contratado para gestionar la inscripción de las propiedades de los matrimonios Ortiz-Sánchez y González-Ortiz. Sin embargo, en vez de realizar dicho trámite, cometió la falta grave de autorizar la Escritura Núm. 104 de *Compraventa* a sabiendas de que los suegros de la quejosa habían fallecido hacía más de 25 años. Evidentemente, el matrimonio Ortiz-Sánchez no compareció ante el notario para la Escritura Núm. 104 de *Compraventa* ni para la Escritura Núm. 106 de *Hogar Seguro* que preparó el notario. En las copias certificadas y en el original de ambos instrumentos públicos, el notario empeñó la fe pública al certificar que los otorgantes comparecieron, fueron identificados y que firmaron las escrituras sin ser cierto. Consecuentemente, al presentar el informe mensual de actividad notarial de los meses de noviembre y diciembre de 2019, el licenciado Alomar Santiago certificó que preparó las aludidas escrituras e identificó al matrimonio

---

[15] In re Santiago Rodríguez, *supra*, pág. 862; In re Bonhomme Meléndez, 202 DPR 610, 626 (2019); In re Rivera Nazario, 193 DPR 573, 587 (2015).

Ortiz-Sánchez y a los suegros de la quejosa como comparecientes cuando era un hecho falso.

Con este cuadro fáctico y marco legal concluimos que el licenciado Alomar Santiago infringió los Arts. 2, 12, 39 de la Ley Notarial, *supra*; las Reglas 12 y 49 del Reglamento Notarial, *supra*, y los Cánones 18, 35 y 38 del Código de Ética Profesional, *supra*.

Debe quedar meridianamente claro que los abogados no deben intentar subestimar a este Tribunal, a los brazos auxiliares que le asisten, a los clientes ni a sus compañeros *so color* de alegados errores o inadvertencias sin intención. Ciertamente, resulta difícil asimilar que "por error e inadvertencia" se presentaron dos borradores de escrituras en el Registro de la Propiedad en las que se certificó la comparecencia, identificación y firma de otorgantes, con inclusión de personas que el notario sabía que habían fallecido. Igualmente, consideramos arduo concebir cómo esto puede constituir una inadvertencia o un error si, mediante dos índices notariales, el notario dio fe a la ODIN, con su firma y sello notarial, que las referidas personas allí nombradas comparecieron al otorgamiento de los instrumentos públicos.

Si bien el licenciado Alomar Santiago cometió un grave error, no podemos pasar por alto que obra a favor del letrado que esta es su primera falta en treinta y seis años de práctica notarial. El licenciado Alomar Santiago admitió su responsabilidad, se comprometió, realizó el trámite judicial y el foro de instancia emitió una *Resolución* que declaró nulas la Escritura Núm. 104 de *Compraventa* y la Escritura Núm. 106 de *Hogar Seguro* y ordenó la anulación de cualquier asiento

registral vigente concernientes a los instrumentos públicos. Asimismo, acreditó la devolución de los $3,000 que recibió por los servicios no prestados al matrimonio Ortiz-Sánchez y manifestó la ausencia de animosidad entre las partes.

## IV

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, se ordena la suspensión inmediata del Lcdo. Walter Alomar Santiago de la práctica de la notaría por el término de seis meses.

La Oficina del Alguacil de este Tribunal inmediatamente incautará la obra protocolar y el sello notarial del licenciado Alomar Santiago y los entregará a la Oficina de Inspección de Notarías para la investigación e informe correspondientes. Consecuentemente, la fianza notarial queda automáticamente cancelada. La fianza se considerará buena y válida por tres años después de su terminación en cuanto a los actos realizados por el licenciado Alomar Santiago durante el periodo en que la fianza estuvo vigente.

Notifíquese esta Opinión *Per Curiam* y Sentencia mediante correo electrónico y por teléfono.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Walter Alomar Santiago          AB-2022-0019          Queja
        (TS-8,157)

*SENTENCIA*

En San Juan, Puerto Rico, a 16 de febrero de 2023.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, se ordena la suspensión inmediata del Lcdo. Walter Alomar Santiago de la práctica de la notaría por el término de seis meses.

La Oficina del Alguacil de este Tribunal inmediatamente incautará la obra protocolar y el sello notarial del licenciado Alomar Santiago y los entregará a la Oficina de Inspección de Notarías para la investigación e informe correspondientes. Consecuentemente, la fianza notarial queda automáticamente cancelada. La fianza se considerará buena y válida por tres años después de su terminación en cuanto a los actos realizados por el licenciado Alomar Santiago durante el periodo en que la fianza estuvo vigente.

Notifíquese esta Opinión *Per Curiam* y Sentencia mediante correo electrónico y por teléfono.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo