per curiam:
Nos corresponde atender una querella contra un abogado-notario a quien se le imputa haber incurrido en violaciones a la Sec. 17 de la anterior Ley Notarial, equivalente al Art. 15 de la actual Ley Notarial, 4 L.P.R.A. see. 2033, y a los Cánones 12, 35 y 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.
Por entender que las actuaciones del querellado se apar-taron de las normas éticas que rigen el ejercicio de la pro-fesión e incurrió en violación de la fe pública notarial, or-denamos su suspensión inmediata e indefinida del ejercicio de la abogacía y de la notaría.
*530 I
El Ledo. Miguel Hernández Vázquez (querellado) fue admitido al ejercicio de la abogacía y el notariado, los días 1 de noviembre de 1978 y 10 de noviembre de 1978, respectivamente. Este intervino como abogado y como no-tario en las reclamaciones hereditarias habidas entre los herederos del matrimonio Castro-Feliú, bisabuelos de la Sra. Carmen M. Sagardía Miranda (quejosa). El quere-llado, además, se convirtió en comunero de un terreno que originalmente perteneció a los bisabuelos de la quejosa, y es el objeto de disputa entre el querellado y la quejosa. A continuación, exponemos un resumen de los hechos que motivaron la interposición de la presente querella.
A. Según surge del expediente, el 10 de junio de 1980 el querellado, actuando como notario, legitimó la firma de Don Saturnino Sagardía Castro,(1) padre de la quejosa, re-lacionado a un compromiso que éste hizo para remover una casa enclavada en el terreno en controversia, “tan pronto se divida o se haga la partición correspondiente”.(2) Aproxi-madamente un año después, el 22 de mayo de 1981, el querellado presentó ante el Tribunal de Primera Instancia una petición sobre declaratoria de herederos para que de-clarasen como únicos herederos de la Sra. María Francisca Castro Feliú(3) a María Mercedes y Saturnino,(4) ambos de apellido Sagardía Castro.(5) El peticionario de la declarato-ria de herederos fue Don Daniel Castro Ortiz, quien no era heredero de la causante, sino su sobrino, y quien tenía in-terés en que se hiciera la división de la comunidad *531 hereditaria. Consecuentemente, dicho tribunal decretó como únicos y universales herederos de la Sra. María Francisca Castro Feliú, a la señora y el señor Sagardía Castro.
Así las cosas, el 3 de mayo de 1982 el querellado —en representación de las Sucesiones de Daniel y Merced, am-bos de apellidos Castro Feliú— presentó una demanda so-bre “División de comunidad de bienes hereditarios” contra la Sucesión de la Sra. María Francisca Castro Feliú para dividir un terreno que tenía una cabida de 4,060.8178 metros cuadrados.(6) El 14 de febrero de 1983 las partes deci-dieron llegar a un acuerdo(7) que fue acogido por el tribunal de instancia mediante una sentencia dictada el 22 de fe-brero de 1983. En dicha estipulación, se adjudicó a los de-mandados un predio de terreno de 1,011.9642 metros cua-drados —sin especificación de colindancias— y la casa de vivienda edificada en el solar, que era habitada por la se-ñora y el señor Sagardía Castro. Asimismo, el tribunal de instancia ordenó a la parte demandante que gestionara con la Administración de Reglamentos y Permisos (A.R.Pe.) la segregación del predio de terreno adjudicado a los deman-dados y que se otorgara la escritura correspondiente. Se-gún surge del expediente, esto último no ocurrió.
No obstante, el 17 de septiembre de 1983 el querellado autorizó la Escritura Núm. 20 sobre “Segregación, parti-ción y adjudicación” a la que comparecieron los herederos de las Sucesiones del señor Daniel y de la señora Merced, ambos de apellido Castro Feliú. En la referida escritura se procedió a “segregar y adjudicar” entre ellos el remanente *532 del terreno sobre el que el tribunal de instancia guardó silencio en la sentencia.(8) De tal escritura tampoco surge que la A.R.Pe. haya aprobado los permisos para las referi-das segregaciones.
Ese mismo día, el querellado compareció junto a su es-posa, la Sra. Carmen Ramírez Muñiz, como parte compra-dora de una fracción del terreno —con especificación de colindancia— que se acababa de “segregar y adjudicar” me-diante la referida Escritura Núm. 20, autorizada por el propio querellado.(9) El 31 de octubre de 1987 el querellado y su esposa vendieron el predio adquirido mediante la Es-critura Núm. 76.(10) Cerca de seis años más tarde, el que-rellado y su esposa compraron de la Sra. Fundadora Castro Caraballo(11) la participación que, al morir su padre, el Sr. Prudencio del Carmen Castro y Morales, adquirió de la Sucesión del Sr. Daniel Castro Feliú. Dicha participación provino de la “segregación y adjudicación” que se hizo en la Escritura Núm. 20, autorizada por el querellado.
Así las cosas, el 26 de septiembre de 1994 el querellado presentó ante el tribunal de instancia una demanda sobre “Interdicto posesorio”(12) contra la Sra. Carmen Sagardía (quejosa), el Sr. Francisco Andrew (esposo de la quejosa), el Sr. Saturnino Sagardía Castro (padre de la quejosa) y la Sra. María Mercedes Sagardía Castro (tía de la quejosa), en la que alegó que éstos no le permitían pasar a su propiedad. El 14 de julio de 1995 el querellado presentó *533 una “Moción de sentencia sumaria”, a lo que los demanda-dos se opusieron. Por su parte, el Tribunal de Primera Ins-tancia declaró “no ha lugar” la “Moción de sentencia suma-ria” por entender que había controversia acerca de la procedencia del terreno en disputa y desestimó el recurso por falta de parte indispensable, debido a que no compare-cieron junto al querellado el resto de los miembros de la comunidad de bienes. Inconforme, el querellado acudió al Tribunal de Apelaciones, quien revocó al tribunal de ins-tancia respecto a la desestimación del recurso, pero no en cuanto a la decisión de declarar “no ha lugar” la sentencia sumaria.
Aun luego de la determinación del Tribunal de Apelacio-nes, quien revocó la determinación del tribunal de instan-cia de desestimar el recurso por falta de parte indispensable, el 24 de diciembre de 1997 el querellado presentó una “Moción solicitando desistimiento sin peijuicio” porque en-tendió que traer a todas las partes indispensables al pleito podía provocar el archivo de la acción al amparo de la Re-gla 39.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III.(13) Ade-más, señaló que la parte demandada había aceptado com-prar su participación así como la participación del resto de los miembros de la comunidad de bienes. El 8 de enero de 1998 el tribunal de instancia desestimó la demanda, sin peijuicio, mediante sentencia. Sin embargo, contrario a lo que el querellado explicó al Tribunal de Primera Instancia como fundamento para su desistimiento, el 23 de febrero de 2000 el querellado envió a la quejosa una carta(14) en la *534 que le informó que desistió de la demanda “en considera-ción a su difunto padre: Saturnino Sagardía”, que no obs-tante, estaba dispuesto a llegar a las últimas consecuen-cias jurídicas, y la invitó a comprar la participación de éste para así dar por terminado el asunto.
B. El 26 de marzo de 2002 la señora Sagardía Miranda presentó una queja ante este Tribunal en la que alegó que el querellado cometió faltas éticas en un caso de partición de herencia de una sucesión, debido a que siendo represen-tante legal de dicha sucesión, demandó a los miembros de ésta, compró y vendió terrenos pertenecientes a la sucesión sin los permisos de las agencias gubernamentales perti-nentes, y utilizaba a otros abogados-notarios para que au-torizaran transacciones ilegales.(15) El 13 de julio de 2002 la quejosa reafirmó lo antes expuesto mediante comunica-ción dirigida a este Foro en la cual indicó que el querellado no era dueño de la finca y que éste había adquirido el te-rreno “violando los derechos de herencia y vendiendo a pa-rientes de él”. También, nos informó que el querellado le había enviado una carta de amenaza para intimidarla.(16) Del mismo modo, el 12 de noviembre de 2002 la quejosa *535 presentó un tercer escrito en el cual alegó que el abogado querellado había ido a su casa con una cámara y un objeto punzante en el bolsillo, que había proferido amenazas, in-dicando que él era el dueño de la propiedad. Además, soli-citó que fuese investigada la obra notarial del querellado.
Posteriormente, el expediente sobre la queja fue refe-rido a la Oficina de Inspección de Notarías (ODIN) para que hiciera la investigación e informe conforme a la Regla 14(d) del Reglamento de este Tribunal, 4 L.P.R.A. Ap. XXI-A.(17) El 14 de octubre de 2003 ODIN presentó el informe requerido, en el que concluyó que el querellado no respon-dió a las exigencias ético-notariales dictadas por este Tribunal debido a sus intervenciones como abogado y notario en un mismo asunto. Por consiguiente, el 7 de mayo de 2004 este Foro dictó una Resolución en la que refirió al Procurador General este asunto para investigación y pre-sentación del informe correspondiente. Por su parte, el 8 de septiembre de 2004 el Procurador General presentó el in-forme sobre la queja objeto del caso de epígrafe en cumpli-miento con la Regla 14(d), supra. En dicho informe, el Pro-curador General llamó la atención a posibles violaciones a los cánones del Código de Etica Profesional y la anterior Ley Notarial de Puerto Rico de 1956.
El 4 de noviembre de 2005 examinada la queja presen-tada por la quejosa, el Informe del Procurador General y la contestación del querellado, le ordenamos al Procurador General que sometiera las querellas correspondientes.
C. Por todo lo anterior, y en cumplimiento con la orden de este Tribunal, el 26 de enero de 2006 el Procurador General *536 (18) presentó una querella disciplinaria contra el licen-ciado Hernández Vázquez en la que le imputó cinco cargos.
En el Cargo I, el Procurador General imputó al quere-llado haber violado el requisito de la dación de fe pública notarial establecido en la Sec. 17 de la anterior Ley Notarial, equivalente al Art. 15 de la actual Ley Notarial, supra. Esto debido a que el querellado autorizó la Escri-tura Núm. 20 sobre “Segregación, partición y adjudica-ción”, que tenía un negocio jurídico inexistente por dispo-sición de ley, por no haberse obtenido la aprobación de la A.R.Pe. para la segregación de los terrenos mencionados en dicho documento público.
En lo que respecta al Cargo II, el Procurador imputó al querellado haber violado los Cánones 12 y 38 del Código de Etica Profesional, supra, por haber actuado el querellado como abogado y notario en un mismo asunto, y fungir como comprador y vendedor de terrenos de la Sucesión que fue su cliente, según resuelto en In re Rosario Maisonet, 142 D.P.R. 89 (1996).
En el Cargo III se atribuyó al querellado haber violado el Canon 12 del Código de Etica Profesional, supra, res-pecto al deber del abogado de ser conciso y exacto en el trámite y la presentación de las causas por cuanto, luego de presentar el interdicto posesorio contra la quejosa y otros, sin la comparecencia del resto de los comuneros, so-licitó una sentencia sumaria cuando conocía que existían controversias en cuanto a la procedencia del terreno que el querellado alegó tener interés propietario.
En cuanto al Cargo TV, el Procurador imputó al quere-llado haber incurrido en violación a la Regla 9 de Procedi-miento Civil, 32 L.P.R.A. Ap. III,(19) y el Canon 35 del *537 Código de Ética Profesional, supra. Esto, porque en el caso de interdicto posesorio antes mencionado, el querellado in-dicó que desistía de su reclamación habida cuenta que la parte demandada había aceptado comprar su participación y la de los demás herederos, información a base de la cual el tribunal de instancia desestimó la acción sin perjuicio. Sin embargo, mediante carta de 23 de febrero de 2000, dirigida a la quejosa y suscrita por el propio abogado que-rellado, éste indicó que había desistido de la demanda por consideración al padre de la quejosa, pero que estaba pre-parado para llevar el caso a las últimas consecuencias ju-rídicas, lo cual no sería necesario si ella (refiriéndose a la quejosa) estuviera dispuesta a comprar la participación de él en el terreno.
En el Cargo V(20) se imputó al querellado haber violado el Canon 38 del Código de Ética Profesional, supra, pues el patrón de persecución que mantuvo hacia la quejosa re-sultó en dos órdenes de protección por acecho contra el querellado, situaciones que atentaron contra la dignidad de la profesión de la abogacía.
Así las cosas, el 30 de enero de 2006 ordenamos al que-rellado que contestara la querella presentada por el Procu-rador General en un término de 15 días a partir de la no-tificación de la Resolución. (21) Debido a que el querellado no contestó, el 29 de septiembre de 2006, le concedimos un término final de 15 días a contar desde la notificación de la Resolución(22) para contestar la referida querella, bajo apercibimiento de que su incumplimiento nos llevaría a continuar los procedimientos sin su comparecencia. El 19 de octubre de 2006 el querellado presentó tardíamente la “Contestación al Informe”, no a la querella.
*538 El 31 de enero de 2007 nombramos a la Leda. Ygrí Rivera de Martínez como Comisionada Especial (Comisiona-da) conforme a la Regla 14(h) del Reglamento de este Tribunal, 4 L.P.R.A. Ap. XXI-A.(23) Por su parte, el 6 de junio de 2007 la Comisionada concedió un tiempo adicional al querellado para que finalmente contestara la querella pre-sentada en su contra. El 25 de junio de 2007 el querellado presentó su contestación a la querella, en la que rechazó las conclusiones del Procurador General. El 14 de octubre de 2009 la Comisionada concluyó su Informe, en el cual afirmó que todos los cargos presentados por el Procurador General fueron probados. Conjuntamente, sugirió que to-másemos en consideración —como atenuante— que el que-rellado se mostró muy afectado por la situación, y expresó dolor y arrepentimiento.
Examinado dicho Informe y los “Comentarios, objecio-nes y recomendaciones al Informe de la Comisionada Especial” que presentó el querellado el 24 de febrero de 2010, procedemos a resolver el caso de epígrafe.
H-1
A. La entonces vigente Ley Notarial de Puerto Rico, Ley Núm. 99 de 27 de junio de 1956 (4 L.P.R.A. sec. 1001 et seq.)(24) establece en su Sec. 17,(25) varios requisitos de redacción y contenido para las escrituras públicas, así *539 como lo relacionado a la expresión de dación de fe notarial. En cuanto a esto último, la citada Sec. 17 dispone lo si-guiente:
No será preciso que el notario exprese que da fe en cada cláu-sula escrituraria de la estipulación que contenga, ni de las condiciones o circunstancias legales de las personas o casos a que se refiera, bastará que consigne una vez al final del docu-mento, que certificará de todo lo contenido en el mismo, para que tal expresión se entienda aplicada a todas las palabras, estipulaciones, manifestaciones y condiciones reales o perso-nales contenidas en el instrumento con arreglo a las leyes.
Al interpretar la mencionada Sec. 17, este Tribunal explicó que cuando un notario autoriza un documento, da fe pública y asegura que ese documento cumple con todas las formalidades de ley —formal y sustantivamente— que el documento es legal y verdadero, y que se trata de una transacción válida y legítima.(26) Asimismo, hemos manifestado que en Puerto Rico, el notario es un profesional del Derecho que ejerce una función pública de dar fe y autenticidad de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, conforme a las leyes.(27) Así, el notario puertorriqueño representa la fe pública ynoaun cliente en particular.(28)
En In re Meléndez Pérez, 104 D.P.R. 770 (1976), manifestamos que la función del notario trasciende el acto externo de la legalización de unas firmas. Igualmente, ex-presamos que la fe pública notarial tiene como base la voluntad ilustrada de los contratantes; no puede ser fruto de la ignorancia y la obscuridad.(29) Por esto, al ser el notario el principal instrumento de la fe pública, y conocedor del Derecho y las leyes, tiene la obligación de propiciar y cer- *540 dorarse de ese estado de condenda informada supliendo las explicaciones, adaradones y advertendas en todo caso en que hagan falta para lograr el consentimiento enterado de los otorgantes al acto notarial.(30)
En fin, hemos pronunciado que el notario que falla a la sociedad y a los que ante él comparecen en este fundamental aspecto de aclaración e ilustración será el coautor de un consentimiento enfermo e ineficaz en derecho y habrá traicionado la fe de la que es principal guardador. (31)
B. Por otra parte, el Código de Ética Profesional contiene los principios éticos que rigen la profesión de la abogacía en Puerto Rico.(32) En particular, el Canon 12 del Código de Ética Profesional, supra, establece que es deber del abogado hacia el tribunal, sus compañeros, las partes y los testigos ser puntual con su asistencia y conciso y exacto en el trámite y presentación de las causas. Dis-pone, además, que los abogados deben asegurarse de no causar indebidas dilaciones en la tramitación y solución de las causas. En In re Rosario Maisonet, supra, expresamos que viola este canon el abogado que mediante su conducta ocasione dilaciones y confusiones innecesarias. También en In re Arroyo Rivera, 148 D.P.R. 354, 358 (1999), reiteramos que los abogados tienen que responder con premura a los requerimientos relacionados a quejas por conducta profesional, pues hacer lo contrario conlleva graves sanciones disciplinarias.
Por otro lado, el Canon 35 del Código de Ética Profesional, supra, dispone, en parte, que la conducta de un abogado debe ser sincera y honrada, ante los tribunales, compañeros de profesión y sus representados, y éste no *541 debe utilizar medios que sean incompatibles con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa representación de hechos o el derecho. Cónsono con lo anterior, hemos resuelto que la conducta de todo abogado ante los tribunales debe ser una caracterizada por sinceridad y honradez, y no actúa profesionalmente el abo-gado que no se ajusta a la sinceridad de los hechos al pre-sentar las causas.(33)
Además, el Canon 38 del Código de Ética Profesional, supra, establece, en lo pertinente, lo siguiente:
El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta impropia. ...
Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida pri-vada como en el desempeño de su profesión, debe conducirse en forma digna y honorable. ...
Al interpretar este canon hemos dicho que los abogados tienen la obligación ética de evitar, tanto en la realidad como en la apariencia, la impresión de conducta conflictiva e incorrecta.(34) Sea en la vida privada como en el desempeño de su función, un abogado debe conducirse en forma digna y honorable.(35) Es impropio que un abogado combine funciones de notario y abogado en un mismo asunto.(36) Así, podemos ejercer nuestra facultad de desaforo aunque las actuaciones del abogado hayan surgido por causas no relacionadas con el ejercicio de su profesión, pues basta que tales actuaciones afecten las condiciones morales del querellado.(37)
*542 C. Por último, según dispone la Regla 14(h) del Reglamento de este Tribunal, supra, corresponde al Comisionado Especial designado celebrar una vista para recibir la prueba y rendir un informe con sus conclusiones de Derecho. Al desempeñar una función similar al juzgador de instancia, el Comisionado Especial se encuentra en mejor posición para aquilatar la prueba testifical y adjudicar credibilidad, por lo que sus determinaciones fácticas merecen nuestra mayor deferencia.(38) Por lo tanto, aunque este Tribunal no está obligado a aceptar el informe de la Comisionada Especial en un procedimiento disciplinario contra un abogado, y podemos adoptar, modificar o rechazar tal informe, de ordinario sostendremos sus determinaciones de hecho, salvo que se demuestre prejuicio, parcialidad o error manifiesto. (39)
III
Con el beneficio de la normativa antes expuesta, pasa-mos a evaluar los hechos que motivan la presente querella para determinar si en efecto el querellado cometió los car-gos imputados.
A. En el Cargo I se imputó al querellado haber violado el requisito de la dación de fe pública notarial establecido en la Sec. 17 de la anterior Ley Notarial de 1956, Ley Núm. 99 de 27 de junio de 1956, pues el querellado autorizó una escritura sobre “Segregación, partición y adjudicación”, que tenía un negocio jurídico inexistente por disposición de ley. Esto, por no haberse obtenido la aprobación de la A.R.Pe. para la segregación de los terrenos mencionados en dicho documento público. Entendemos que el querellado violó la fe pública notarial en él depositada. Veamos.
*543 La Ley Orgánica de la Administración de Reglamentos y Permisos en su Art. 22,(40) dispone, en lo pertinente, lo si-guiente:
Carecerá de eficacia cualquier otorgamiento de escritura pú-blica o contrato privado de lotificación si no ha sido sometida previamente dicha lotificación a la consideración de la Admi-nistración de Reglamentos y Permisos y no ha sido aprobada por ésta, excepto en aquellos casos en que lo permita el Regla-mento de Lotificación; Disponiéndose, que cualquier otorga-miento por medio de escritura pública o contrato privado en el cual se haga una lotificación sin haber sido previamente some-tida y aprobada por la Administración de Reglamentos y Per-misos, cuando ello fuere necesario, quedará ratificado y conva-lidado si, con posterioridad a dicho otorgamiento, la Administración de Reglamentos y Permisos aprobare, me-diante resolución, la lotificación objeto de la escritura o con-trato privado. (Énfasis nuestro.)
Respecto a este particular, en Rodríguez Padilla v. Cabassa, 102 D.P.R. 419, 421 (1974), resolvimos que la inter-dicción que prescribe el artículo antes citado es absoluta. Es decir, una escritura de segregación no tiene eficacia si no ha sido aprobado previamente por la A.R.Pe. No obs-tante, se atenúa el rigor de la prohibición admitiendo la convalidación del contrato si con posterioridad la A.R.Pe. aprobase la lotificación.
Como cuestión de umbral, no surge del expediente que A.R.Pe. haya aprobado la segregación contenida en la Es-critura Núm. 20 sobre “Segregación, partición y adjudica-ción” que autorizó el querellado el 17 de septiembre de 1983. De hecho, en ninguna de las cláusulas de dicha es- *544 critura se hace referencia a los permisos de A.R.Pe. Ade-más, resulta que han pasado más de 25 años desde que se autorizó la mencionada escritura y aún dichos comuneros, incluido el querellado, no han obtenido los permisos de se-gregación de A.R.Pe. Ciertamente, como custodio de la fe pública notarial, cuando el querellado autorizó la escritura en controversia, con su firma y sello notarial dio fe y ase-guró que ese documento cumplía con todas las formalida-des —tanto formales como sustantivas— y que ese docu-mento era legal y verdadero. Sin embargo, dicha escritura carecía de los permisos de la A.R.Pe. necesarios para el negocio jurídico que autorizó el querellado, entiéndase la segregación de un terreno.
Como conocedor del Derecho, el querellado debía estar al tanto de los requisitos que exigía la ley para los negocios jurídicos que autorizaba. Más aún, el querellado tenía que conocer el deber que le ocupa de cerciorarse que sus clien-tes fuesen conscientes de las posibles implicaciones a las que podían enfrentarse de no contar con los permisos re-queridos por las agencias pertinentes. De acuerdo a los he-chos particulares de este caso y según surge de la antes mencionada escritura, el querellado falló en asesorar a sus clientes y en autorizar una escritura de segregación con arreglo a las leyes. Aun así, el querellado estampó su firma y sello al final de la escritura en representación de la da-ción de fe notarial en él depositada, la cual asegura que la autorización del documento se hizo con arreglo a las leyes.
En el Cargo II se imputó al querellado haber violado los Cánones 12 y 38 del Código de Etica Profesional, supra, según resuelto en In re Rosario Maisonet, supra, por haber actuado como abogado y notario en un mismo asunto, y fungir como comprador y vendedor de terrenos de la Suce-sión que fue su cliente. En síntesis, de los hechos antes expuestos surge claramente que el querellado intervino como abogado y como notario en reclamaciones habidas en-tre los herederos del matrimonio Castro-Feliú, bisabuelos *545 de la quejosa en este caso. El querellado, además, se con-virtió en comunero de un terreno que originalmente perte-neció a los bisabuelos de la quejosa, y es el objeto de dis-puta entre el querellado y la quejosa. Como si no fuera suficiente, el querellado demandó en varias ocasiones a miembros de la referida Sucesión, causando dilaciones y confusiones innecesarias en contravención al Canon 12 del Código de Etica Profesional, supra. Todo lo anterior, cons-tituyó además una grave falta al Canon 38 del Código de Etica Profesional, supra, el cual prescribe que abogados tienen la obligación ética de evitar, tanto en la realidad como en la apariencia, la impresión de conducta conflictiva e incorrecta.
Asimismo, en el Cargo III se imputó al querellado la violación al Canon 12 del Código de Etica Profesional, supra, debido a que éste interpuso una demanda de inter-dicto posesorio y luego una solicitud de sentencia sumaria en contra de la quejosa con conocimiento de la frivolidad de sus planteamientos. Esto en contravención al mandato del citado Canon 12 respecto al deber del abogado en ser con-ciso y exacto en el trámite de sus causas. Igualmente, en el Cargo IV se imputó al querellado haber faltado al Canon 35, supra, y la Regla 9 de Procedimiento Civil de 1979,(41) pues en el caso de interdicto posesorio antes mencionado, el querellado indicó que desistía de su reclamación porque la quejosa había aceptado comprar su participación y la de los demás herederos, información a base de la cual el tribunal de instancia desestimó la acción sin peijuicio. Sin embargo, el querellado envió una carta a la quejosa en la que indicó que había desistido de la demanda por conside-ración al padre de ella, pero que estaba preparado para llevar el caso hasta las últimas consecuencias jurídicas, lo *546 cual no sería necesario si ella (refiriéndose a la quejosa) estuviera dispuesta a comprar la participación de él en el terreno.
Sin duda, la actuación del querellado a la que hacemos referencia constituye una violación al deber ético que im-pone el Canon 35, supra, concerniente a la sinceridad y honradez que debe reflejar un abogado para con los tribu-nales, sus compañeros y la sociedad en general. Indepen-dientemente de cuál fuera la verdadera motivación del querellado para desistir de la demanda, lo cierto es que éste fue contradictorio con las razones que le expuso al Tribunal en comparación con la que le informó a la parte demandada. Al mismo tiempo, el querellado incumplió con la Regla 9 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III), que indica que la firma de un abogado equivale a cer-tificar que el abogado leyó el escrito, "que de acuerdo con su mejor conocimiento, información y creencia está bien fundado, y que no ha sido interpuesto para causar demora u opresión”. Esto cuando firmó tanto la Moción de desisti-miento como la carta dirigida a la quejosa, pues el quere-llado tenía conocimiento de que los fundamentos incluidos en ambos documentos no eran verdaderos. Además, el de-sistimiento de la acción a base de información falsa, se-guido por el envío de la carta a la quejosa aparenta a todas luces que tal actuación fue incurrida con el propósito de causar opresión a la quejosa.
En el Cargo V se imputó al querellado haber infringido el Canon 38 del Código de Ética Profesional, supra, como consecuencia del patrón de persecución que mantuvo el querellado hacia la quejosa, el cual resultó en dos órdenes de protección por acecho contra el querellado. Entendemos que estas actuaciones del querellado para con la quejosa son del todo contrarias a lo que debe ser el comportamiento de un abogado, y atentaron contra la dignidad de la profe-sión de la abogacía. Hemos reiterado que tanto en la vida privada como en el desempeño de su función, un abogado *547 debe conducirse en forma digna y honorable. Además, debe esforzarse en exaltar el honor y la dignidad de su profesión aunque eso conlleve sacrificios personales. Evidentemente, no se honra ni exalta la profesión de la abogacía incu-rriendo en conducta que motive solicitudes de órdenes de protección por acecho.
Finalmente, debemos señalar que además de las faltas éticas antes discutidas, el querellado desatendió en varias ocasiones las órdenes de este Tribunal a los efectos de con-testar la querella presentada en su contra. Esto, en clara violación al Canon 12 del Código de Ética Profesional, supra, sobre el cual hemos expresado que los abogados tienen que responder con premura a los requerimientos relaciona-dos a quejas por conducta profesional, pues hacer lo con-trario conlleva graves sanciones disciplinarias. Luego de haber analizado los hechos que motivaron la querella que atendemos hoy, opinamos que el Ledo. Miguel Hernández Vázquez faltó a la fe pública notarial en él depositada y se apartó de los principios éticos que rigen la profesión de la abogacía.
IV
Por los fundamentos antes expuestos, ordenamos la sus-pensión inmediata e indefinida del Ledo. Miguel Hernán-dez Vázquez del ejercicio de la abogacía y de la notaría. El Alguacil de este Tribunal deberá incautar la obra y el sello del licenciado Hernández Vázquez.
Se le impone el deber de notificar a todos sus clientes de su presente inhabilidad para seguir representándolos, de devolver cualesquiera honorarios recibidos por trabajos no realizados y de informar oportunamente de su suspensión a los distintos foros judiciales y administrativos del país. Además, deberá certificarnos en 30 días del cumplimiento de estos deberes.

Se dictará sentencia de conformidad.

*548 La Juez Asociada Señora Rodríguez Rodríguez no intervino.

 También conocido como Lino Sagardía Castro.

 Dicho affidávit núm. 488 no se encuentra en el expediente, sino una certifi-cación del asiento practicado en el Registro de Testimonios del querellado.

 También conocida como Venancia Castro Feliú.

 También conocido como Lino Sagardía Castro.

 María Mercedes y Saturnino, ambos de apellido Sagardía Castro, son la tía y el padre de la quejosa, respectivamente.

 Los demandantes alegaban que los demandados estaban poseyendo el te-rreno en controversia en concepto de herederos, y que así lo hizo constar el Sr. Saturnino Sagardía Castro en el documento público autorizado por el querellado. Por su parte, los demandados alegaron que su posesión era pacífica, pública y en con-cepto de dueño por más de 60 años, y que el referido documento público fue firmado por el Sr. Saturnino Sagardía Castro por invitación del querellado, sin saber lo que firmaba.

 El acuerdo fue firmado por los demandados y su abogado y por el querellado en representación de los demandantes.

 El terreno se dividió en cuatro predios. Dos de ellos con cabida de 1,102.6754 m/c y 1,102.1187 m/c, respectivamente. Otros dos, con cabida de 660.3392 m/c y 60.9Í33 m/c, respectivamente, para uso público.

 La Escritura Núm. 76 sobre “Compraventa” fue autorizada por el notario Raúl Aquino Figueroa el 17 de septiembre de 1983.

 A través de la Escritura Núm. 111 sobre “Compraventa”, autorizada por el notario Nelson Bassatt, el querellado vendió el predio de terreno a los esposos, Sr. Santos Martín Lamberty y Sra. Nélida Solares Rivera.

 La Sra. Fundadora Castro Caraballo fue dienta del querellado en el caso sobre “División de comunidad de bienes” contra la Sucesión de la Sra. María Francisca Castro Feliú.

 El querellado solicitó el desalojo de los demandados y la destrucción o eli-minación de cualquier edificación u objeto dentro de la propiedad.

 La Regla 39.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, a la que se hace referencia en este caso fue derogada por este Tribunal el 4 de septiembre de 2009 mediante la adopción de las nuevas Reglas de Procedimiento Civil de 2009. In re Aprobación Rs. Proc. Civil, 176 D.P.R. 673 (2009).

 Surge del expediente que la carta de 23 de febrero de 2000 lee como sigue: “Estimada señora Sagardía: Actualmente usted está ejerciendo posesión de un te-rreno donde yo tengo una participación económica. En el pasado llevamos una acción la cual desistimos sin peijuicio en consideración a su difunto padre; Saturnino Sagardía. Sinembargo [sic] en estos momentos estamos preparados para llevar el caso a las últimas consecuencias jurídicas. Esto no sería necesario si usted está dispuesta [a] comprarnos nuestra participación en dicho terreno, por lo que la invito *534 a que nos visite acompañada si así usted lo prefiere o con grabadora para que grabe nuestra conversación el día y hora que usted entienda conveniente, para lo que le pido que nos llame al [###-####] para concertar la cita. Cordialmente, Ledo. Miguel Hernández Vázquez”. Apéndice de la Querella del Procurador General de Puerto Rico, pág. 94.

 El 14 de junio de 2002 el querellado, Ledo. Miguel Hernández Vázquez, se limitó a presentar como contestación a la queja de la Sra. Carmen M. Sagardía Miranda una moción para que este Tribunal admitiera como su contestación una copia de la que había presentado ante el Colegio de Abogados para refutar otras querellas que le había presentado la quejosa, por los mismos hechos, y que habían sido archivadas. No obstante, el querellado no abundó en las alegaciones relaciona-das con las imputaciones que hiciera la quejosa en cuanto a “las transacciones ilega-les” y la utilización de “otros notarios” para tales fines, la compra y venta a sus familiares de terrenos que no le pertenecían y sin la debida autorización de las agencias gubernamentales, el conflicto de intereses en que incurrió él al demandar a una sucesión que fue su cliente, y las amenazas dirigidas a la quejosa. Esto, a pesar de que este Foro le concedió una prórroga de 30 días para contestar la queja presen-tada en su contra.

 Véase esc. 11.

 “Cuando el(la) abogado (a) o el(la) Notario(a) hayan presentado su contes-tación, o haya transcurrido el término concedido para contestar, el(la) Secretario(a) remitirá la queja y la contestación, o la queja y una expresión al efecto de que no ha sido contestado, según fuese el caso, al(la) Director(a) de la Oficina de Inspección de Notaría, respectivamente, para que éstos(as), dentro del término de treinta (30) días, se expresen sobre las mismas y hagan la recomendación que estimen pertinente.” 4 L.P.R.A. Ap. XXI-A, R. 14(d).

 Por conducto de la Procuradora General Auxiliar.

 La Regla 9 de Procedimiento Civil, 32 L.P.R.A. Ap. III, a la que se hace referencia en este caso fue derogada por este Tribunal el 4 de septiembre de 2009 mediante la adopción de las nuevas Reglas de Procedimiento Civil de 2009. In re Aprobación Rs. Proc. Civil, supra. Esta regla, a su vez, fue enmendada por la Ley Núm. 220 de 29 de diciembre de 2009 y la Ley Núm. 98 de 26 de julio de 2010.

 Según surge de la querella sometida por el Procurador General, en dichas órdenes se requiere al abogado querellado abstenerse de acercarse o entrar a la residencia de la quejosa, a la escuela a la que ésta asiste y sus alrededores, y al lugar de empleo y sus alrededores.

 La Resolución se notificó el 18 de mayo de 2006.

 La Resolución se notificó el 2 de octubre de 2006.

 “Se celebrará una vista para recibir la prueba sobre la querella. El tribunal podrá ordenar que se celebre ante sí o, en el uso de su discreción podrá nombrar un Comisionado Especial para que reciba la prueba y rinda un informe con sus deter-minaciones de hecho.” 4 L.P.R.A. Ap. XXI-A, R. 14(h).

 Esta ley fue derogada mediante la Ley Núm. 75 de 2 de julio de 1987, conocida como la Ley Notarial de Puerto Rico de 1987 (4 L.P.R.A. see. 2001 et seq.). Sin embargo, la escritura a la que se hace referencia en el Cargo I se autorizó durante la vigencia de la anterior Ley Notarial de 1956.

 La Sec. 17 de la anterior Ley Notarial es análoga al Art. 15 de la Ley Notarial vigente, 4 L.P.R.A. see. 2033, respecto a varios requisitos de redacción y contenido para las escrituras públicas. In re Martínez Ramírez, 142 D.P.R. 329, 342 esc. 5 (1997). No obstante, en lo que respecta a la expresión de dación de fe pública notarial, el equivalente a la mencionada Sec. 17 es el Art. 26 de la actual Ley Notarial, 4 L.P.R.A. sec. 2044.

 In re Feliciano Ruiz, 117 D.P.R. 269 (1986).

 Art. 2 de la Ley Notarial de Puerto Rico de 1987 (4 L.P.R.A. sec. 2002).

 In re Raya, 117 D.P.R. 797 (1986); In re Lavastida et al., 109 D.P.R. 45 (1979).

 In re Meléndez Pérez, 104 D.P.R. 770 (1976).

 íd.

 íd.

 In re Vélez Barlucea, 152 D.P.R. 298, 311 (2000).

 In re Astacio Caraballo, 149 D.P.R. 790 (1999); In re Peña Clos, 135 D.P.R. 590 (1994).

 In re Vélez Lugo, 164 D.P.R. 751 (2005).

 In re Roldán Figueroa, 106 D.P.R. 4 (1977).

 In re Vélez Lugo, supra.

 Colegio de Abogados de P.R. v. Barney, 109 D.P.R. 845, 848 (1980).

 In re García Aguirre, 175 D.P.R. 433 (2009); In re Morales Soto, 134 D.P.R. 1012, 1016 (1994).

 In re Pagán Pagán, 171 D.P.R. 975 (2007); In re Morell, Alcover, 158 D.P.R. 791 (2003); In re Soto López, 135 D.P.R. 642, 646 (1994).

 Ley Núm. 76 de 24 de junio de 1975 (23 L.P.R.A. ant. sec. 71u).
A pesar de que dicha ley fue derogada mediante el Art. 19.10 de la Ley para la Reforma del Proceso de Permisos, Ley Núm. 161 de 1 de diciembre de 2009, el Art. 3 del Código Civil, 31 L.P.R.A. see. 3, dispone que las leyes no tendrán efecto retroac-tivo a no ser que expresamente se disponga lo contrario. En armonía con lo anterior, el Art. 18.1 de la Ley para la Reforma del Proceso de Permisos establece, en lo pertinente, que: “Cualquier acción civil radicada en relación con la estructuración de cualquiera de las leyes, o partes de éstas, derogadas o afectadas por esta Ley, y en trámite antes de la fecha de vigencia de esta Ley, no quedará afectada por ninguna de las derogaciones o modificaciones formuladas por esta Ley.”

 La Regla 9 de Procedimiento Civil, 32 L.P.R.A. Ap. III, a la que se hace referencia en este caso fue derogada por este Tribunal el 4 de septiembre de 2009 mediante la adopción de las nuevas Reglas de Procedimiento Civil de 2009. In re Aprobación Rs. Proc. Civil, supra. Esta regla, a su vez, fue enmendada por la Ley Núm. 220 de 29 de diciembre de 2009 y la Ley Núm. 98 de 26 de julio de 2010.