per curiam:
El Ledo. Enrique Reyes Coreano (querellado) fue admitido al ejercicio de la abogacía el 5 de junio de 1974 y, posteriormente, al ejercicio de la notaría el 1 de julio del mismo año. El 27 de agosto de 2008, la Oficina del Procurador General de Puerto Rico (Procurador General) presentó una querella en contra del licenciado Reyes Coreano. Le formuló seis cargos por alegadas violaciones a los Cánones 18, 19, 21, 23, 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX. A continuación exponemos un resumen de los hechos que motivaron el proceso disciplina-rio que hoy atendemos.
I
El 10 de agosto de 2004, el Sr. Rafael Delbrey Rivera (quejoso) presentó una queja ante este Tribunal en contra del licenciado Reyes Coreano. El quejoso indicó en su es-crito que el querellado lo representaba en dos demandas en cobro de dinero y una de daños y perjuicios. Argüyó que el querellado le cobró $18,000 por dichos servicios, que in-cluían $2,000 que presuntamente correspondían al Ledo. Jeffrey O. Reyes Rivera, quien originalmente representaba al quejoso en dichos casos. Así, el señor Delbrey Rivera alegó que le pidió al querellado que le entregara su expe-diente y una factura detallada con relación a las horas tra-bajadas, pero este se negó a entregar los documentos por-que, según él, no representaba al quejoso.
Por otro lado, el quejoso expresó que estaba casado con la Sra. Elaine Reyes Torres, sobrina del licenciado Reyes Coreano. El 10 de agosto de 2004, durante una vista de su *743 divorcio con la señora Reyes Torres, el querellado compa-reció en representación de su hermano, el Sr. Eliseo Reyes Coreano, quien a su vez era el suegro del señor Delbrey Rivera. En esa vista se iba a dilucidar si los suegros del quejoso habían comprado una propiedad con dinero de la Sociedad Legal de Gananciales habida entre el quejoso y su esposa, sin su autorización. Para esa fecha, el quere-llado ya lo representaba en las dos demandas antes men-cionadas; por lo tanto, adujo que como el licenciado Reyes Coreano representó a su hermano en la vista, existía un conflicto de interés.
Vista la queja en contra del licenciado Reyes Coreano, le solicitamos que la contestara. En la contestación a la queja, el querellado explicó que el señor Delbrey Rivera era su sobrino político, quien se estaba divorciando de su so-brina, la señora Reyes Torres. Aclaró que él no represen-taba a ninguna de las partes en el divorcio. Así las cosas, explicó que la abogada del quejoso, la Leda. María E. Juarbe I. Botella, le envió una carta el 29 de julio de 2004 para solicitar el contrato que el quejoso suscribió con él. Este le contestó que solo tenía un contrato con la señora Reyes Torres, pero se negó a entregarlo por tratarse de información confidencial entre él y su dienta. Además, le informó a la licenciada que el señor Delbrey Rivera tenía unos casos de desahucio por falta de pago, pero que era representado por el licenciado Reyes Rivera. Afirmó que solo había firmado un contrato de servicios profesionales con la señora Reyes Torres para representar sus intereses y los de la Sociedad Legal de Gananciales como partes in-terventoras en los casos de desahucio y cobro de rentas presentadas por CRV Río Hondo en contra del quejoso.
Contrario a lo alegado por el quejoso, el licenciado Reyes Coreano adujo que compareció a la vista de divorcio con el único propósito de acompañar a su hermano, pero no repre-sentarlo en la vista. Por otro lado, negó haber recibido $18,000 de parte del quejoso y negó haber facturado $2,000 *744 por los servicios que prestó el licenciado Reyes Rivera. Se-gún el querellado, el licenciado Reyes Rivera prestó sus servicios gratuitamente por su amistad con la señora Reyes Torres.
Luego de recibir la contestación a la queja, el señor Delbrey Rivera presentó una réplica en la que indicó que al comenzar los casos de desahucio era representado por el licenciado Reyes Rivera. Ahora bien, durante el proceso, el querellado le hizo recomendaciones sobre el caso y se re-unió en varias ocasiones con el licenciado Reyes Rivera. Como evidencia, presentó una factura que le entregó el querellado el 20 de enero de 2004,(1) en la cual en el inciso C incluye las reuniones con el licenciado Reyes Rivera. Asi-mismo, esa factura expresa que ese bufete se encargaría de pagar los honorarios del licenciado Reyes Rivera por la re-presentación en los casos de desahucio y cobro de dinero. El señor Delbrey Rivera explicó que el querellado le había indicado que asumiría su representación en los casos antes mencionados. Así, y confiando en la palabra del querellado, prescindió de los servicios del licenciado Reyes Rivera. Alegó que luego comenzaron los problemas matrimoniales con su esposa y se percató de que todas las gestiones que estaba realizando el querellado no eran para su beneficio, sino para el de su esposa y la Sociedad Legal de Gananciales.
El 28 de diciembre de 2004 referimos la queja ante el Procurador General para que realizara una investigación y rindiera un informe conforme con la Regla 14(d) del Reglamento de este Tribunal, 4 LPRA Ap. XXI-A, entonces vigente. Así, el Procurador General comenzó la investigación correspondiente. Durante el transcurso de esta, el se-ñor Delbrey Rivera encontró copia del contrato de servicios profesionales que había suscrito con el querellado y se lo entregó al Procurador General.(2) Ahora bien, este tenía *745 únicamente la firma del licenciado Reyes Coreano y del quejoso, mas no la firma de la esposa. Con relación al con-trato, el querellado expresó que el matrimonio acudió a su oficina para que él le preparara una propuesta de contrato de servicios profesionales para atender los casos de des-ahucio y cobro de dinero. Indicó que el quejoso abandonó la reunión y, por tal razón, le entregó la propuesta firmada a la señora Reyes Torres para que la discutiera con su es-poso, y si él estaba de acuerdo, la firmaran. Sin embargo, explicó que el señor Delbrey nunca estuvo de acuerdo con el contrato y no lo firmó.
Luego de culminar la investigación, el Procurador General rindió un informe en el cual concluyó que el licenciado Reyes Coreano “atentó contra las disposiciones y principios esbozados en los Cánones 18, 19, 21, 23, 35 y 38 del Código de Etica Profesional”. Así las cosas, mediante Resolución de 9 de noviembre de 2007, autorizamos al Procurador General a que presentara la querella correspondiente en con-formidad con el contenido del informe. Por consiguiente, el 27 de agosto de 2008, el Procurador General presentó una querella en contra del licenciado Reyes Coreano.
En la querella, el Procurador General formuló seis cargos. En el primer cargo imputó al querellado de violar el Canon 18 del Código de Ética Profesional, supra, por no haber ejercido con el señor Delbrey Rivera su deber de leal-tad y compromiso. En el segundo cargo le atribuyó al que-rellado infringir el Canon 19, supra, por negar su respon-sabilidad hacia su cliente y no informarle de todo asunto importante que surgiera en el desarrollo del caso. En el tercer cargo, el Procurador General inculpó al querellado de violar el Canon 21, supra, que prohíbe a un abogado representar intereses encontrados. En cuanto al cuarto cargo, el Procurador General consideró que el querellado violó el Canon 23, supra, ya que negó la existencia del con-trato con el quejoso y no quiso entregarle una factura de-tallada de sus servicios. En el quinto cargo se le imputó *746 violar el Canon 35, supra, en el cual se dispone que “[l]a conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relacio-nes con sus compañeros debe ser sincera y honrada”. Por último, en el sexto cargo, el Procurador General atribuyó al licenciado Reyes Coreano infringir el Canon 38, supra, donde se establece que un abogado debe evitar hasta la apariencia de conducta impropia en el desempeño de sus labores profesionales.
Luego de presentada la querella, el licenciado Reyes Coreano la impugnó mediante varios escritos, pero sin contestarla.(3) Además, acudió ante esta Curia mediante una Moción en Cumplimiento de Mandamiento y se Archive la Querella por Falta de Jurisdicción. Esta fue declarada no ha lugar y se le concedió un plazo final de quince días para que contestara la querella. No obstante, el querellado presentó una moción de reconsideración.
Ahora bien, debido a los múltiples escritos presentados por el querellado sin obedecer nuestras órdenes y conside-rando su conducta, determinamos necesario evaluar la ca-pacidad mental y emocional del licenciado Reyes Coreano. Así las cosas, el 17 de junio de 2009, este Tribunal declaró no ha lugar la reconsideración y designó Comisionada Especial (Comisionada) a la Hon. Ygrí Rivera de Martínez para que recibiera prueba relacionada con la capacidad mental o emocional del licenciado Reyes Coreano, según lo establecido en la Regla 15(h) de este Tribunal, 4 LPRA Ap. XXI-A.
Una vez se cumplió con todo lo dispuesto en la Regla 15(H), supra, la Comisionada emitió un informe en el cual expresó que el panel de médicos concluyó que el licenciado *747 Reyes Coreano no padece de incapacidad mental. Según lo anterior, esta Curia archivó el procedimiento de incapaci-dad y ordenó continuar con los procedimientos establecidos en la Regla 14 del Reglamento de este Tribunal, supra.
Así las cosas, mediante Resolución de 5 de noviembre de 2010, nombramos nuevamente como Comisionada a la honorable Rivera de Martínez para que recibiera prueba y nos rindiera un informe con sus determinaciones de hecho y recomendaciones. Luego de varias vistas ante la Comi-sionada, esta emitió un informe en el cual concluyó que el licenciado Reyes Coreano violó los Cánones 18, 19, 21, 23, 35 y 38 del Código de Ética Profesional, supra. La Comi-sionada indicó que el testimonio y los escritos del quere-llado fueron “inconsistentes, confusos y alejados de la verdad”. Informe de la Comisionada Especial, pág. 51. Ex-presó que las actuaciones del licenciado Reyes Coreano no fueron sinceras, ya que “no concuerda lo que dice con la realidad de lo que demuestran los documentos, aun los que él mismo estipuló y se niega a reconocer su responsabili-dad en los hechos, la relación abogado-cliente con el que-joso y sus actuaciones al margen de los Cánones de Ética Profesional”. (Énfasis suprimido). íd., págs. 51-52. En lo pertinente, indicó que
[a]nte los hechos probados, quedó demostrada la pobre diligen-cia del querellado en su gestión profesional, su pobre actitud desplegada antes y durante el proceso disciplinario, la falta de aceptación clara y sincera de sus actuaciones erróneas, su con-ducta errática y contumaz, su conflicto de interés ignorado y su falta de honestidad. íd., págs. 53-54.
Al considerar la prueba, la Comisionada determinó que quedó probado que a partir de 1991 se estableció una relación de abogado-cliente entre el licenciado Reyes Coreano y el señor Delbrey Rivera, ya que el querellado representó al quejoso en unas acciones relacionadas con el uso ilegal del nombre de una de las tiendas que formaban parte de la corporación de la cual el quejoso era presidente. Esa reía- *748 ción profesional continuó y el querellado representó a la señora Reyes Torres en los casos de cobro de dinero y daños y perjuicios, siendo la parte demandante no solo la señora Reyes Torres, sino también la Sociedad Legal de Ganancia-les compuesta por ella y el señor Delbrey Rivera.
Por otro lado, según la minuta de la vista relacionada con el uso indebido de fondos gananciales en el divorcio entre la señora Reyes Torres y el señor Delbrey Rivera, el querellado compareció en representación de su hermano, quien era suegro del quejoso. De la minuta de esa vista se deduce que el querellado indicó que comparecía en repre-sentación de su hermano únicamente para esa vista. Cuando la abogada del quejoso, la licenciada Juarbe I. Bo-tella, escuchó esto expresó en corte abierta que eso consti-tuía un conflicto de interés. Así las cosas, la Comisionada estableció como probado que el querellado sí compareció en representación de su hermano.
En cuanto a la factura de 20 de enero de 2004 —estipu-lada por las partes — , la Comisionada informó que quedó demostrado que el querellado le facturó al quejoso por el diseño de la estrategia de los casos de desahucio y cobro de dinero, por reuniones que efectuó con el licenciado Reyes Rivera y por los honorarios del licenciado Reyes Rivera. Según el Informe de la Comisionada Especial, pág. 46, “[e]l querellado no pudo nunca explicar por qué cobró los hono-rarios del Ledo. Jeffrey Reyes Rivera, luego de haber ne-gado insistentemente este aspecto, afirmando incluso que el licenciado Reyes Rivera había prestado gratuitamente los servicios”. (Énfasis suplido). Además, la Comisionada ex-presó que no fue creíble la versión de la procedencia de la factura, según explicó el querellado. Sobre este aspecto, la Comisionada indicó que
[t]odo el tracto es muy confuso y no parece veraz. La señora Reyes contrató los servicios del querellado el 12 de abril de 2005, las demandas fueron presentadas en diciembre de 2004 *749 y la factura tiene fecha de 20 de enero de 2004. (Énfasis nuestro). Informe de la Comisionada Especial, pág. 37.
Añadió que no hay forma de conciliar las fechas de las demandas y de la factura con la versión ofrecida por el querellado. La Comisionada expresó que de creer la ver-sión del querellado, este “preparó una factura a un cliente que, aún no era su cliente, por unos servicios que aún no había ofrecido ni acordado”. Informe de la Comisionada Especial, pág. 49.
Por último, en cuanto al contrato de servicios profesio-nales que entregó el señor Delbrey Rivera, la Comisionada no le dio credibilidad a la versión del licenciado Reyes Co-reano porque fue inconsistente. Indicó que el contrato ha-bla por sí solo y quedó probado, ya que el querellado no pudo controvertirlo con prueba convincente. No obstante, expresó en su informe que el licenciado Reyes Coreano cumple con varios de los atenuantes que este Tribunal ha validado en los procedimientos disciplinarios. La Comisio-nada indicó, en lo pertinente, que
[n]o obstante lo anterior, nos permitimos, con mucho respeto, sugerir que en caso de que este Honorable Tribunal acoja este informe, se tome como atenuante el hecho de que es la primera vez que el querellado enfrenta un procedimiento disciplinario. Además, se trata de una persona que goza de buena reputa-ción en su comunidad y labora activamente en su iglesia, des-tacándose en esta función junto a su familia. Informe de la Comisionada Especial, pág. 54.
Las partes no objetaron el informe de la Comisionada, por lo que el caso quedó sometido el 19 de septiembre de 2013.(4) Examinados los hechos ante nuestra considera-ción, estamos en posición de resolver.
*750 II
En reiteradas ocasiones hemos expresado que los cánones del Código de Etica Profesional establecen las normas mínimas de conducta que rigen a los miembros de la profesión legal en el desempeño de su delicada e importante labor. (5)
A. Canon 18 del Código de Ética Profesional
Reiteradamente, hemos expresado que el Canon 18 impone a todo abogado el deber de desempeñarse de forma capaz y diligente al defender los intereses de su cliente, desplegando en cada caso su más profundo saber y habilidad, y actuando de la forma en que la profesión jurídica generalmente estima adecuada y responsable.(6) Un abogado falta a su deber de diligencia cuando no realiza en el momento oportuno las gestiones que se le encomenda *751 ron, de la forma adecuada y sin retrasos.(7) En lo pertinente, el Canon 18 expone que
[s]erá impropio de un abogado asumir una representación pro-fesional cuando está consciente de que no puede rendir una labor idónea competente y que no puede prepararse adecuada-mente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia.
Es deber del abogado defender los intereses del cliente dili-gentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurí-dica en general estima adecuada y responsable.
Hemos expresado que el deber de diligencia profesional del abogado establecido en el Canon 18 es totalmente incompatible con la desidia, despreocupación y displicencia en el trámite de un caso.(8) De esta forma, impone a los abogados el deber de ser competentes, cuidadosos y diligentes al tramitar los asuntos encomendados y al defender los intereses de sus clientes.(9) Consecuentemente, el letrado que acepta representar a un cliente, pero no hace gestión profesional con ese propósito, comete una violación ética.(10)
B. Canon 19 del Código de Ética Profesional
Hemos expresado que un abogado no solo debe representar a su cliente con fidelidad, lealtad y diligencia, sino que debe mantenerlo informado de todo asunto importante que surja en el desarrollo del caso cuya atención se le *752 ha encomendado.(11) Esta comunicación con el cliente sobre fases importantes de los asuntos que atiende el abogado debe ser directa y efectiva.(12) El Canon 19 establece, en lo pertinente, lo siguiente:
El abogado debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado.
Es importante destacar que este deber es independiente del de diligencia establecido en el Canon 18.(13) Esta obligación comprende mantener informado al cliente de las gestiones realizadas, consultar los asuntos que estén den-tro del ámbito discrecional de la representación legal y cumplir con las instrucciones del cliente.(14)
Así, todo abogado está obligado a informar a sus clientes sobre las diligencias realizadas para tramitar la causa de acción para la que fue contratado.(15) No informar al cliente de las incidencias de su caso constituye una lesión al citado canon y al proceso general de impartir justicia.(16) Esta obligación constituye un elemento imprescindible en la relación fiduciaria que caracteriza el vínculo abogado-cliente.(17)
Por lo anterior, hemos dispuesto que se viola el Canon 19 cuando: no se atienden los reclamos de informa *753 ción que el cliente solicita; no se le informa del resultado adverso de la gestión encargada; la acción se desestima o se archiva; no se mantiene al cliente al tanto del estado o la situación procesal del caso, o, simplemente, se le niega información del caso.(18)
C. Canon 21 del Código de Ética Profesional
El Canon 21 tiene el propósito de evitar que los abogados incurran en la representación de intereses encontrados.(19) Es necesario que se preserve una lealtad completa del abogado hacia su cliente y, además, que la representación provista por el abogado esté libre de ataduras personales.(20) Así, este canon establece, en lo pertinente, que
[e]l abogado tiene para con su cliente un deber de lealtad completa. Este deber incluye la obligación de divulgar al cliente todas las circunstancias de sus relaciones con las par-tes y con terceras personas, y cualquier interés en la contro-versia que pudiera influir en el cliente al seleccionar su consejero. Ningún abogado debe aceptar una representación legal cuando su juicio profesional pueda ser afectado por sus intereses personales.
No es propio de un profesional el representar intereses encontrados. Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.
La obligación de representar al cliente con fidelidad incluye la de no divulgar sus secretos o confidencias y la de adoptar medidas adecuadas para evitar su divulgación. Un abogado no debe aceptar la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de otro cliente anterior ni servir como árbitro, especialmente cuando el cliente anterior le ha hecho confidencias que puedan afectar a uno u otro cliente, aun cuando ambos clientes así lo aprueban. *754 Será altamente impropio de un abogado el utilizar las confi-dencias o secretos de un cliente en perjuicio de éste.
Como podemos observar, el deber de lealtad que pro-mueve este canon consiste en que el abogado no revele con-fidencias que el cliente le haya comunicado.(21) Por esa razón, se prohíbe que el abogado incurra en representaciones simultáneas o sucesivas adversas.(22) Este canon, por lo tanto, prohíbe que un abogado represente a un cliente en una controversia que está sustancialmente relacionada a la de otro cliente actual o anterior, cuando los intereses de ambos son adversos.(23) Sobre este asunto hemos expresado que “ ‘el abogado debe cuidar que sus actuaciones no den margen a la más leve sospecha de que promueve o defiende intereses encontrados con los de su cliente’ ”.(24)
D. Canon 23 del Código de Etica Profesional
De otra parte, el Canon 23 requiere al abogado que dé pronta cuenta del dinero u otros bienes del cliente y no mezclarlos con los propios.(25) En lo pertinente, este canon dispone que
[l]a naturaleza fiduciaria de las relaciones entre abogado y cliente exige que éstas estén fundadas en la honradez absoluta. En particular, debe darse pronta cuenta del dinero u otros bienes del cliente que vengan a su posesión y no debe mezclarlos con sus propios bienes ni permitir que se mezclen.
Así, el abogado que retenga y esté en posesión de cual-quier cantidad de dinero perteneciente a su cliente infringe *755 los postulados de este canon.(26) Este Tribunal ya ha resuelto que ni la devolución del dinero retenido al cliente ni la falta de intención para apropiárselos eximen a un abo-gado de la sanción disciplinaria correspondiente.(27) El solo hecho de que el letrado retenga fondos pertenecientes a un cliente justifica una sanción disciplinaria.(28) Esto se debe a es un atentado a la relación fiduciaria que el abogado re-tenga una suma de dinero que le adelantó su cliente en concepto de honorarios sin realizar la gestión a la cual se comprometió. (29)
E. Canon 35 del Código de Ética Profesional
Esta Curia ha enfatizado que todo miembro de la profesión legal debe cumplir con los deberes de sinceridad, exaltación del honor y dignidad de la profesión. (30) Así, los abogados tienen la obligación de velar por que los procesos legales se lleven a cabo de forma honesta, digna y transparente.(31) El Canon 35 del Código de Ética Profesional dispone que
[l]a conducta de cualquier miembro de la profesión legal ante los tribunales para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.
No es sincero ni honrado el utilizar medios que sean incon-sistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. [...]
El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávit u otros documentos, y al presentar causas.
*756 De acuerdo con la disposición anterior, la conducta de un abogado debe ser sincera y honrada frente a todos y ante todo tipo de acto.(32) Por lo tanto, estas normas se exigen frente a todos: clientes, compañeros abogados y tribunales. (33)
El deber establecido en el Canon 35 se infringe por el simple hecho de faltar a la verdad, independientemente de los motivos de la falsedad.(34) En esencia, no es necesario que se haya faltado a la verdad deliberadamente o con la intención de defraudar o engañar.(35) Por lo tanto, no es defensa no haber obrado de mala fe o deliberadamente, ni con intención de engañar, como tampoco lo es que no se le haya causado daño a un tercero.(36) Lo fundamental es que se falte a los valores de honradez y veracidad, pilares de la profesión legal.(37)
Asimismo, este canon aplica también al proceso investi-gativo dentro del proceso disciplinario, pues, como hemos expresado, este se infringe tanto al negarse a cumplir con los requerimientos de este Tribunal como con los del Pro-curador General para impedir que se descubra la magnitud de los desvíos éticos.(38)
F. Canon 38 del Código de Ética Profesional
El Canon 38 enfatiza los valores principales que deben prevalecer en el ejercicio de la profesión legal: la *757 dignidad y el honor. (39) Este canon dispone, entre otras cosas, lo siguiente:
El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. [...]
Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida pri-vada como en el desempeño de su profesión, debe conducirse en forma digna y honorable.
Como podemos observar, este canon exige que todo abo-gado se conduzca de tal forma que exalte la dignidad y el honor de su profesión. Además, los abogados están obliga-dos a evitar la conducta impropia en su vida profesional y personal, tanto en la realidad como en la apariencia.(40) Así, en repetidas ocasiones hemos expresado que “por ser los abogados el espejo donde se refleja la imagen de la profesión, éstos deben actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejercen”.(41) Ello implica que todo abogado tiene que desempeñarse con dignidad y honor, y aunque ello conlleve sacrificios personales, se debe conducir digna y honorablemente, tanto en la vida privada como en el desempeño de su profesión. (42) Esto responde a la confianza depositada en el abogado como miembro de la profesión legal.(43)
Por lo tanto, la conducta imputada a un abogado como violación al Canon 38 será aquella que realmente le *758 haga indigno de pertenecer a este foro.(44) Para determinar esto, se debe analizar si esa conducta realmente afecta las condiciones morales del abogado.(45) Esto significa que no se puede concluir que un abogado violó el Canon 38 por el simple hecho de violar otros cánones de ética profesional, sino por aquella conducta que es contraria a los valores principales de la profesión: la dignidad y el honor.
De otra parte, este Tribunal ha establecido que al determinar la sanción disciplinaria que se impondrá a un abogado, podemos considerar los factores siguientes: (1) la buena reputación del abogado en la comunidad; (2) su historial previo; (3) si esta constituye su primera falta y si ninguna parte ha resultado perjudicada; (4) la aceptación de la falta y su sincero arrepentimiento; (5) si se trata de una conducta aislada; (6) el ánimo de lucro que medió en su actuación; (7) resarcimiento al cliente, y (8) cuales-quiera otras consideraciones, ya bien atenuantes o agra-vantes, que medien en relación con los hechos.(46)
i — I h — I
Al licenciado Reyes Coreano se le imputa haber violado los Cánones 18, 19, 21, 23, 35 y 38 del Código de Ética Profesional, supra. Veamos si incurrió en las alegadas violaciones.
En el presente caso, quedó demostrado que entre el li-cenciado Reyes Coreano y el señor Delbrey Rivera existía una relación de abogado-cliente desde 1991. Según surgió de la prueba, en el 2003 el quejoso y su esposa acudieron al querellado para que los representara en los casos de cobro de dinero y desahucio, pero este les indicó que no podía y *759 los refirió al licenciado Reyes Rivera. No obstante, según consta expresamente en la factura de 20 de enero de 2004, el licenciado Reyes Coreano continuó asesorándolos en el caso e, incluso, se reunía con el licenciado Reyes Rivera. En la factura, el querellado hizo un listado de los servicios prestados hasta el momento, entre los que incluyó: diseño de estrategia en los casos de desahucio, reuniones con el licenciado Reyes Rivera, preparación de mociones y los ho-norarios del licenciado Reyes Rivera. Al examinar la fac-tura se puede observar que no solo incluye servicios profe-sionales prestados a la señora Reyes Torres, como indicó el querellado. En primer lugar, la factura estaba dirigida ex-presamente al señor Delbrey Rivera y, en segundo lugar, los servicios profesionales que proveyó el querellado esta-ban relacionados a la demanda que presentó CRV Río Hondo en contra del quejoso. Además, en la factura se in-cluyeron los honorarios del licenciado Reyes Rivera, esto a pesar de que el querellado reafirmó en varias ocasiones que no facturó a nombre de ese licenciado y que este último prestó sus servicios gratuitamente.
Por otro lado, surge del expediente que el 24 de enero de 2004, las partes firmaron un contrato de servicios profesionales. En él se constata que el licenciado Reyes Coreano iba a representar a la pareja en una demanda de daños y perjuicios en contra de CRV Río Hondo. No se pre-sentó prueba que rebatiera la veracidad del contrato. No hay duda de que existía una relación de abogado-cliente entre el licenciado Reyes Coreano y el señor Delbrey Rivera.
Así las cosas, las actuaciones del licenciado Reyes Co-reano demostraron falta de sinceridad, lealtad y pobre de-ber de diligencia hacia el señor Delbrey Rivera. La prueba demostró que a pesar de firmar un contrato de servicios profesionales con el quejoso y cobrarle honorarios de abo-gado, negó que lo representara y no lo mantuvo informado sobre el estado del caso, alegando que solo representaba a la señora Reyes Torres.
*760 Ahora bien, el querellado no solo actuó contrario a los cánones del Código de Etica Profesional antes del proceso disciplinario, sino que durante este su conducta también fue contraria a lo establecido en los cánones. El licenciado Reyes Coreano sostuvo en todo momento que no representó al quejoso, que nunca firmó un contrato de servicios profe-sionales con este y que la factura de 20 de enero de 2004 respondía a servicios prestados a la señora Reyes Torres. Sus alegaciones no se ajustaron a lo que demostró la prueba presentada ante la Comisionada, por lo tanto, to-das estas alegaciones del querellado eran falsas. El licen-ciado Reyes Coreano demostró pobre diligencia en su ges-tión profesional y nunca aceptó de forma clara y sincera sus actuaciones erróneas.
Según lo antes expuesto, el licenciado Reyes Coreano infringió los Cánones 18 y 35 porque su conducta se alejó del deber de desempeñarse con diligencia, honradez, since-ridad y lealtad hacia el señor Delbrey Rivera. Según el contrato firmado por ambos, el licenciado Reyes Coreano acordó representar al quejoso, sin embargo, no hizo gestión profesional alguna e, incluso, luego negó que lo representara. Además, quedó demostrado que el querellado faltó a la verdad durante el proceso disciplinario al ofrecer versiones que resultaron inconsistentes con la prueba presentada. Así, no importa si el querellado obró de mala fe o con la intención de engañar, lo cierto es que el querellado faltó al valor de honradez y veracidad tratando de impedir que se descubriera su desvío ético.
Por otro lado, el licenciado Reyes Coreano violó los Cá-nones 19 y 23, pues, al negar que representaba al quejoso, no lo mantuvo informado del caso. Además, y según la fac-tura de 20 de enero de 2004, el querellado le cobró $8,000 y luego negó que lo representara. Por lo tanto, no le rindió cuenta sobre los honorarios que cobró.
En lo que respecta a la comparecencia del querellado a la vista de divorcio del señor Delbrey Rivera y la señora *761 Reyes Torres, este negó haber ido en representación de su hermano. No obstante, la minuta de esa vista probó que sí fue y representó a su hermano. Como mencionáramos, en la vista de divorcio se iba a dilucidar si los suegros del quejoso habían comprado una propiedad con dinero de la Sociedad Legal de Gananciales habida entre el quejoso y su esposa, sin su autorización. Para esa fecha, el quere-llado estaba representando al quejoso en los casos de daños y perjuicios. Por lo tanto, al ir a la vista en representación de su hermano, estaba representando intereses encontra-dos entre dos clientes simultáneos. Determinado esto, y como existía una relación de abogado-cliente entre el que-joso y él, existía un conflicto de interés. Por lo tanto, el licenciado Reyes Coreano infringió el Canon 21 que pro-mueve el deber de lealtad hacia los clientes y prohíbe que los abogados incurran en representaciones adversas simultáneas.
Por último, se le imputó al licenciado Reyes Coreano violar el Canon 38. Como señalamos anteriormente, no se viola este canon por el simple hecho de violar otros cánones. Ahora bien, tenemos que evaluar si la conducta desplegada por el licenciado va contra la dignidad y el honor de la profesión. Según lo dispuesto por este canon, las actuaciones del licenciado Reyes Coreano atentan contra la dignidad y el honor de la profesión. En primer lugar, el querellado negó representar al quejoso aun cuando había evidencia de un contrato de servicios profesionales y una factura que demostraba que había cobrado honorarios de abogado. En segundo lugar, siendo abogado del quejoso re-presentó a otro cliente en contra de este con intereses adversos. Además, durante todo el proceso disciplinario faltó a la verdad sobre los hechos ocurridos con el señor Delbrey Rivera y nunca aceptó sus actuaciones erróneas. Sus alegaciones, en todo momento, fueron inconsistentes, confusas y alejadas de la verdad. Esta conducta impropia del querellado va contra la dignidad y el honor de la profe- *762 sión legal. Por lo tanto, el licenciado Reyes Coreano violó el Canon 38.
> I — i
Según lo antes expuesto, concluimos que el licenciado Reyes Coreano infringió los Cánones 18, 19, 21, 23, 35 y 38 del Código de Etica Profesional, supra.
Es importante señalar que este licenciado cumple con algunos de los factores atenuantes que esta Curia ha esta-blecido para considerar al momento de determinar la san-ción disciplinaria. En primer lugar, el querellado goza de una reputación intachable y trabaja activamente en su iglesia. Por otro lado, esta constituye su primera falta y no existen quejas, querellas o reclamaciones pendientes en su contra.
Ahora bien, existe el agravante de que el licenciado Reyes Coreano negó su responsabilidad y sostuvo hechos con-tradictorios, y tampoco ha mostrado arrepentimiento. En definitiva, con relación a la querella presentada, el licen-ciado Reyes Coreano presentó alegaciones inconsistentes desde el comienzo.
V
Por los fundamentos expuestos, ordenamos la suspen-sión inmediata del Ledo. Enrique Reyes Coreano de la práctica de la profesión por un año. El querellado deberá notificar a todos sus clientes su inhabilidad para continuar con su representación y deberá devolver los expedientes y honorarios recibidos por trabajos no rendidos en los casos pendientes. Además, deberá notificar oportunamente de la suspensión que hoy se ordena a los foros judiciales y administrativos. El Alguacil de este Tribunal incautará in-mediatamente la obra y el sello notarial del señor Reyes Coreano para el trámite correspondiente del Director de la *763 Oficina de Inspección de Notarías. Las gestiones antes des-critas deberán ser certificadas a este Tribunal dentro de treinta días a partir de la notificación de esta Opinión.

Se dictará Sentencia de conformidad.

 Véase Anejo 3 del Informe del Procurador General.

 Véase Anejo 6 del Informe del Procurador General.

 Los escritos presentados por el licenciado Reyes Coreano fueron: Moción Acompañando Carta al Hon. Salvador J. Antonetti Stutts en Agotamiento de Trámite Administrativo; Impugnación de Querella sometida por la Hon. Mariana D. Negrón Vargas, Hon. Minnie H. Rodríguez López y la Hon. Ileana M. Oliver Falero y Solici-tud de Vista Evidenciaría Exculpatoria, e Investigación de Conducta Inadecuada y Negligencia Crasa de Procuradoras Bajo los Hechos Claramente Expuestos.

 El informe de la Comisionada fue notificado el 30 de mayo de 2013. Desde ese momento comenzó el término simultáneo de veinte días que tienen las partes para ofrecer sus comentarios u objeciones y sus recomendaciones en cuanto a la acción que deba tomar el Tribunal. Transcurrido ese término, el Tribunal resolverá lo que pro-ceda en derecho. Véase Regla 14(l) y (m) del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B.
*750 E1 12 de junio de 2013, el licenciado Reyes Coreano solicitó la transcripción de las vistas para oponerse al informe. Mediante Resolución de 25 de junio de 2013, autorizamos la regrabación solicitada. El 7 de agosto de 2013, el querellado consignó el arancel necesario. Ahora bien, transcurrido más de un mes, el 19 de septiembre de 2013, este Tribunal dio por sometido el caso para su adjudicación. Así las cosas, el 24 de septiembre de 2013, mediante Moción Solicitando Reconsideración y para que se Permita la Radicación de Escrito en Oposición a Informe de la Comisionada Especial, el licenciado Reyes Coreano solicitó que se reconsiderara la orden de dar por some-tida la querella. Luego, el 25 de octubre de 2013, el licenciado Reyes Coreano pre-sentó sus objeciones al Informe de la Comisionada.
La Moción de 24 de septiembre de 2013 y la Oposición al Informe de la Comi-sionada de 25 de octubre de 2013 las presentó el querellado en exceso al término para objetar el Informe de la Comisionada y luego de que el caso quedara sometido para su resolución, por lo que ambas mociones se declaran no ha lugar. Por lo tanto, no consideraremos la transcripción presentada ni las objeciones y recomendaciones. Véanse: In re Ayala Vega I, 189 DPR 672 (2013); In re Comas, Rosado, 180 DPR 143 (2010).

 In re Colón Hernández, 189 DPR 275 (2013); In re Peña, Santiago, 185 DPR 764, 778 (2012); In re Birriel Cardona, 184 DPR 301, 306 (2012); In re Muñoz, Morell, 182 DPR 738, 749 (2011); In re Vélez Lugo, 180 DPR 987, 994 (2011); In re Izquierdo Stella, 154 DPR 732, 736 (2001); In re Matos González, 149 DPR 817, 819 (1999); In re Filardi Guzmán, 144 DPR 710, 715 (1998).

 In re Ayala Vega I, supra; In re Rivera Ramos, 178 DPR 651, 664 (2010); In re Mulero Fernández, 174 DPR 18, 29 (2008).

 S. Steidel Figueroa, Ética y responsabilidad del abogado, San Juan, Pubs. JTS, 2010, pág. 179. Véanse, además: In re Ayala Vega I, supra; In re Vilches López, 170 DPR 793, 798 (2007).

 In re Ortiz Delgado, 189 DPR 826 (2013); In re Vega Quintana, 188 DPR 536 (2013); In re Pujol Thompson, 171 DPR 683, 689 (2007); In re Padilla Pérez, 135 DPR 770, 776 (1994).

 In re Ortiz Delgado, supra; In re Soto Charraire, 186 DPR 1019, 1027 (2012); In re Plaud González, 181 DPR 874, 886-887 (2011).

 In re Ortiz Delgado, supra; In re Soto Charraire, supra; In re Alonso Santiago, 165 DPR 555, 563 (2005).

 In re Nieves Nieves, 181 DPR 25,40 (2011); In re Cardona Vázquez, 108 DPR 6, 17-18 (1978).

 In re Nieves Nieves, supra; In re Maduro Classen, 137 DPR 426, 431-432 (1994).

 In re Hernández González, 188 DPR 721 (2013); In re Muñoz, Morell, supra, pág. 753; In re Pujol Thompson, supra.

 In re Hernández González, supra; In re Colón Morera, 172 DPR 49, 58 (2007).

 In re Nieves Nieves, supra; In re García Ortiz, 176 DPR 123, 129 (2009); In re Mulero Fernández, supra, pág. 30; In re De León Rodríguez, 173 DPR 80, 89 (2008).

 In re Nieves Nieves, supra; In re Rosario, 116 DPR 462, 466 (1985).

 In re Colón Morera, supra, pág. 57; In re Mulero Fernández, supra; In re García Muñoz, 170 DPR 780, 789 (2007); In re Criado Vázquez, 155 DPR 436, 456 (2001).

 In re Colón Morera, supra; In re Acevedo Álvarez, 143 DPR 293, 298 (1997); In re Vélez Valentín, 124 DPR 403, 410 (1989).

 In re Pérez Marrero, 185 DPR 449, 457 (2012); In re Toro Cubergé, 140 DPR 523, 529 (1996).

 In re Pérez Marrero, supra; In re Pizarro Colón, 151 DPR 94, 116 (2000).

 In re Pérez Marrero, supra; Liquilux Gas Corp. v. Berríos, Zaragoza, 138 DPR 850, 858 (1995).

 Íd.

5) Íd.

 In re Pérez Marrero, supra, pág. 458. Véase In re Monge García, 173 DPR 379, 384 (2008).

6) In re Ayala Vega I, supra; In re Ríos Ríos, 175 DPR 57, 72-73 (2008).

 In re Ayala Vega I, supra; In re Colón Hernández, supra; In re Rivera Lozada, 176 DPR 215, 225 (2009).

 In re Ayala Vega I, supra; In re Colón Hernández, supra; In re Vega Quintana, supra; In re Ríos Ríos, supra, pág. 73; In re Rivera Irizarry, 155 DPR 687, 693 (2001).

 Íd.

 In re Ayala Vega I, supra; In re Torres Viñals, 180 DPR 236, 246 (2010); In re Ramírez Ferrer, 147 DPR 607, 614 (1999).

 In re Nieves Nieves, supra, pág. 41.

 In re Pons Fontana, 182 DPR 300, 306 (2011).

 In re Iglesias García, 183 DPR 572, 577-578 (2011); In re Pons Fontana, supra; In re Nieves Nieves, supra; In re Collazo Sánchez, 159 DPR 769, 773 (2003).

 In re Nieves Nieves, supra.

 In re Iglesias García, supra; In re Nieves Nieves, supra; In re Curras Ortiz, 174 DPR 502, 512 (2008).

 In re Iglesias García, supra.

 In re Iglesias García, supra; In re Nieves Nieves, supra; In re Astado Caraballo, 149 DPR 790, 799 (1999).

 In re Ayala Vega I, supra; In re Nieves Nieves, supra, pág. 43; In re Astado Caraballo, supra.

88) In re Iglesias García, supra; In re Nieves Nieves, supra; In re Astado Caraballo, supra.

 In re Gordon Menéndez, 183 DPR 628, 643 (2011).

 In re García Vega, 189 DPR 741 (2013); In re Cotto Luna, 187 DPR 584, 590-591 (2012); In re Peña, Santiago, supra, pág. 781.

 In re García Vega, supra; In re Fontánez Fontánez, 181 DPR 407, 417 (2011); In re Santiago Ríos, 172 DPR 802, 822 (2007); In re Quiñones Ayala, 165 DPR 138, 145 (2005); In re Silvagnoli Collazo, 154 DPR 533, 541 (2001); In re Ortiz Brunet, 152 DPR 542, 556 (2000).

 In re Santiago Ríos, supra.

 In re Peña, Santiago, supra; In re Sepúlveda, Casiano, 155 DPR 193, 205 (2001).

 In re Santiago Ríos, supra, pág. 824.

 Íd.

 In re Ayala Vega I, supra; In re Hernández González, supra; In re Vázquez Pardo, 185 DPR 1031, 1044 (2012); In re Peña, Santiago, supra, pág. 787; In re Gordon Menéndez, supra, pág. 645; In re Plaud González, supra, págs. 887-888.